# 23-702

================================================================

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Fernando G. IRAZU,

*Plaintiff-Appellant*

v.

Margarita OLIVA SAINZ DE AJA, Kevin Francis COLLINS,
Jeffrey Alan DIAMOND,

*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the District of Connecticut
_____

**BRIEF OF APPELLANT FERNANDO G. IRAZU**
_____

Fernando G. Irazu
Billinghurst 1656, 2 A
Buenos Aires, 1425
Argentina
+54 11 4824-1067
fgirazu@gmail.com

*Plaintiff-Appellant, Pro se, Attorney at Law*

================================================================

# TABLE OF CONTENTS

**Page**

Table of Authorities.................................................................................2

    *Cases*.............................................................................................3

    *Statutes*.........................................................................................5

    *Doctrine*........................................................................................6

Jurisdictional Statement...........................................................................7

Statement of Issues..................................................................................7

Statement of the Case..............................................................................8

Summary of the Argument.......................................................................27

Argument and Standard of Review..........................................................30

    ISSUE I: Should Mr. IRAZU's complaint have been admitted by the District Court against two private parties pursuant to 28 U.S.C. § 1331, §1343, and/or §1332 (diversity of citizenship), without any strict need for a § 1983 claim calling for "state actors"? If strictly needed, can two private parties be counted as a State-actor for purposes of a § 1983 claim, both of them attorneys and one of them representing the other one while also acting as trustee of the Court?.................... 30

    ISSUE II: As a principle of law, do clerks, magistrates and judges enjoy "absolute immunity" in all cases? If not, should the complaint have been admitted pursuant to a 42 U.S.C. § 1983 claim, and should Mr. IRAZU have been allowed to amend it and to provide further evidence of an ongoing abusive criminal fraud before local courts in Connecticut?.........................................................37

    ISSUE III: Has Mr. IRAZU's due process been violated at the District Court level?......................................................................................................41

    ISSUE IV: Should Judge Victor A. BOLDEN and US Magistrate Robert SPECTOR have been disqualified from intervening in this case?......................... 44

Conclusion..............................................................................................51

## <u>TABLE OF AUTHORITIES</u>

***Cases***                                                                       **<u>Page</u>**

*Ashelman v. Pope*, 793 F.2d 1072 (9th Circ. 1986)...................................................40

*Board of Education v. Farmingdale*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (N.Y. 1975).....................................................................................11

*Burke v. Barnes*, 479 U.S. 361, 363 (1987)................................................................47

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961).......................37

*Chafin v. Chafin*, 568 U.S. 165 (2012).....................................................................12

*Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013).......................................47

*Green v. Maraio*, 722 F.2d. 1013 (2nd. Cir. 1983)..................................................40

*Harris v. Harvey,* 605 F.2d 330 (7th Cir. 1979).......................................................37

*Honig v. Doe*, 484 U.S. 305, 317 (1988) .................................................................47

*Baker v. McCollan*, 443 U.S. 144, n. 3 (1979)…………………………………………37

*Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)…………………………………………37

*Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001)..........................................................................................................37

*Brunette v. Humane Society of Ventura County,* 294 F.3d 1205 (9th Cir. 2002)....37

*Del Marcelle v. Brown Country Corp.*, 680 F.3d 887 (7th Cir. 2012)……………17

*Dennis v. Sparks*, 449 U.S. 24, 29 (1980)…………………………………………...37

*DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999)…………………………..………37

*Cases (cont.)*

*Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir. 1983)........................................37

*Jackson v. Metropolitan Edison, Co*., 419 U.S. 345, 351 (1974)...........................37

*Johnson v. Knowles*, 113 F.3d 1114, 118 (9th Cir. 1996).....................................37

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016)....................47

*Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003)........................................37

*Lee v. Katz,* 276 F.3d 550, at 554 (9th Cir. 2002)..................................................37

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)...................................47

*Murchison*, 349 U.S. 133, 136 (1950)....................................................................50

*Pavone v. West,* 22 Conn. App. 623, 632-33 (2004)..............................................35

*Rendell-Baker v. Kohn,* 457 U.S. 830, 842 (1982)................................................37

*Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), cert den. *Zeller v. Rankin*, 106 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326............................................................37

*Skinner v. State of Oklahoma, ex rel. Williamson* 316 U.S. 535 (1942)...............43

*Timbs v. Indiana*, 586___ (2019)...........................................................................42

*United States v. Antonius*, No. 21-1083, 7-10-2023 (2d. Cir. 2023)......................29

*United States v. Juvenile Male,* 564 U.S. 932, 936 (2010).....................................47

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)..............................................................17

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S.__ (2018)....................................................................................................................17

*Mathis v. Pac. Gas & Elec. Co*., 75 F.3d 498, 503 (9th Cir. 1996)........................37

**Cases (cont.)**

*303 Creative LLC v. Elenis*, 600 U.S.\_\_\_\_ (2023)...................................................18

**Statutes**

28 U.S.C. § 1331.........................................................................7, 11, 22, 30

28 U.S.C. § 1343.........................................................................7, 11, 22, 30

28 U.S.C. § 1332 (a)....................................................................7, 11, 22, 30

42 U.S.C. § 1983.......................7, 11, 19, 21, 22, 26, 29, 30, 31, 32, 36, 37, 40, 49

28 U.S.C. § 1915(e)(2)(B)...................................................................21

28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii)....................................................27

18 U.S.C. § 1341...............................................................................20

Foreign Corrupt Practices Act (FCPA)..................................................20

Fed. R. Civ. P. 52(b)...................................................................25, 26

Fed. R. Civ. P. 60.............................................................................25

Fed. R. Civ. P. 72.............................................................................24

Rule 1.12 (a), Rules of Professional Conduct, *Connecticut Practice Book*, 2023.................................................................................................33

Preamble, Rules of Professional Conduct, *Connecticut Practice Book*, 2023.................................................................................................34

General Statutes § 1-25 and annotations, The Attorney's Oath, Rules of Professional Conduct, *Connecticut Practice Book*, 2023........................34

§ 61-7, Joint and Consolidated Appeals, *Connecticut Practice Book*, 2023.................................................................................................45

### *Doctrine*

Richmond, Douglass, "Sanctioning clients for lawyers' misconduct – problems of agency and equity"*, Michigan State Law Review*, 835 (2012)................................36

Axelberg, Tracy, "Sanctions available for attorney's misconduct: a glimpse of the other remedies.", *Montana Law Review*, Vol. 47 (1986)........................................36

Shaman, Jeffrey "Judicial Immunity from Civil and Criminal Liability", *San Diego Law Review*, Vol. 27:1 (1990)..........................................................................40-41

## JURISDICTIONAL STATEMENT

The US District Court had jurisdiction over this matter per different legal grounds –not exclusionary in themselves–: 28 U.S.C. §1331, § 1343, § 1332 (a) (diversity of citizenship), and 42 U.S.C. § 1983. After two years, the US District Court dismissed Mr. IRAZU's complaint and he timely filed a notice of appeal on 4/24/2023. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**ISSUE I**: Should Mr. IRAZU's complaint have been admitted by the District Court against two private parties pursuant to 28 U.S.C. § 1331, §1343, and/or §1332 (diversity of citizenship), without any strict need for a § 1983 claim calling for "state actors"?  If strictly needed, can two private parties be counted as a State-actor for purposes of a § 1983 claim, both of them attorneys and one of them representing the other one while also acting as trustee of the Court?

**ISSUE II**: As a principle of law, do clerks, magistrates and judges enjoy "absolute immunity" in all cases?  If not, should the complaint have been admitted pursuant to a 42 U.S.C. § 1983 claim, and should Mr. IRAZU have been allowed to amend it and to provide further evidence of an ongoing abusive criminal fraud before local courts in Connecticut?

**ISSUE III**: Has Mr. IRAZU's due process been violated at the District Court level?

**ISSUE IV**: Should Judge Victor A. BOLDEN and US Magistrate Robert

SPECTOR have been disqualified from intervening in this case?

## STATEMENT OF THE CASE

**1.** On 5/5/2021, Mr. Fernando G. IRAZU ("Mr. IRAZU") initially sued for

damages two of the three Appellee-Defendants, Ms. Margarita OLIVA SAINZ de

AJA ("Ms. OLIVA"), the prior's ex-wife, and her counsel Mr. Kevin F. COLLINS

("Mr. COLLINS") (# 1). Such action was based on abuse of process with

fraudulent intent out of on-going family proceedings in Connecticut. Basically, a

tort claim that revolves around a criminal fraud before the Connecticut legal

system (with international ramifications) that also encompasses contractual issues

as a result of violations to a Court-mandated Stipulation within the same forum.

**2.** In early 2021 the other side refused to abide by applicable law and timely

put in the market for sale Mr. IRAZU & Ms. OLIVA's jointly-owned property in

Greenwich, Connecticut, with a valuation of $1,800,000, thus causing serious

damages to Mr. IRAZU. Both Ms. OLIVA and Mr. COLLINS attempted to keep

the property for themselves without even listing it for sale, counting on local

rulings for it.[1] The property was ultimately sold a year later, in 2022, at a discount,

---

[1] The US fraudulent scheme unfolded as follows: Ms. OLIVA and Mr. COLLINS refused to list the jointly-owned house for sale as mandated by court orders by 4/2021, while having a comparative valuation of $1,800,000 (falsely denied) and a listing agreement for $1,750,000 from the top-notch real estate broker house of Coldwell Banker (admitted). The property had been acquired with the fruit of Mr.

IRAZU's working effort, and had only $41,399.56 in debt when it was sold. They argued: (i) the house was worth half of such amount, $975,000, a figure they adjusted a year later to $1,250,000; (ii) Mr. IRAZU owed money to them (via a vexatious motion for college expenses and others from 3/2020, as an indigent person and against the terms settled by the parties before the court in 2016); thus (iii) they shall keep the house for themselves without further due. Judge MOUKAWHSER simply ignored Mr. IRAZU's outstanding motions to dismiss from 3/2020 and for contempt from 4/2021 due to such flagrant violation to court orders. The other side resorted to a related appraiser for the occasion in 4/2021, who produced such "tailor-made" work for them, yet someone who during trial testified truthfully as to various issues, and because of this truthfulness he was stopped in his testimony by Judge MOUKAWSHER –for telling the truth. On top, Judge MOUKAWSHR by himself –no party request from Mr. COLLINS or otherwise– declared the terms of the court-mandated Stipulation denying him of jurisdiction "ambiguous", against its clear terms and clarifications on record by Judge Erika TINDILL, the one who mandated it in 2016 ["THE COURT: *Well, what Judge Tindill said during some colloquy is not going to be relevant --*", Official Transcripts, Hearing before Judge Donna Heller, Superior District Court of Stamford/Norwalk, State of Connecticut, 7/13/2017]. Judge MOUKAWSHER did so to impose college expenses on Mr. IRAZU, while disregarding the declaration of indigency by the US District Court. Judge MOUKAWSHER was later compelled by the appellate court to modify such ruling via a motion for review. Judge MOUKAWSHER deemed unnecessary to subpoena the real estate broker from Coldwell Banker who produced the accurate comparative valuation of $1,800,000, and claimed in his ruling that Mr. IRAZU offered no proof of such value. Moreover, Judge MOUAKWSHER, despite Mr. IRAZU's objections and insistence as to the need of updating the house's listing price on numerous occasions, ordered the house to be listed for sale at $1,250,000, and stripped this party of all of his property rights during the sale process via court order. When Ms. OLIVA and Mr. COLLINS realized the house had to be listed for sale to "third-parties in the market" –meaning they had no chance of getting it straight for very little or no money–, they decided on their own to list it for $1,600,000, yet short $200,000 of its true market value, at the very least, and way above and against the listing price of $1,250,000 they alone had pursued via court order. In the end, the other side sold the house for $1,671,000 last 4/13/2022, when evidence indicates that a sum closer to $2,000,000 could have been achieved or surpassed, needless to say a year before in the midst of the Covid-19 pandemic in suburban Greenwich, Connecticut. Mr. IRAZU had recurrently availed himself to be bought out, yet the other side refused to do so every single time. Against the law, Judge

against the law and without Mr. IRAZU's participation. The bulk of those proceeds are being held by the local court; and the mandated distribution so far basically steals most funds from Mr. IRAZU also against the law. Ms. OLIVA and Mr. COLLINS are succeeding in their criminal endeavor with full impunity. A ruling from the local appellate court will most likely seal the outcome. Three *Petitions for Writ of Certiorari* before the US Supreme Court were denied during the 2013-2019 period.[2]

**3.** The local district court and appellate court are clearly acting in sync, following the progress of these simultaneous federal proceedings closely, and timing their own resolutions and attitudes based on it. There is a cause and effect

---

MOUKAWHSER allocated the sale proceeds between the parties as follows: $267,713.13 for Mr. IRAZU and $1,154,554.97 for Ms. OLIVA, after imposing on the prior expenses he is not responsible for under applicable law. Judge MOUKAWSHER, following Mr. IRAZU's request, declared Ms. OLIVA in contempt to court for selling the house against court orders but refused to impose any sanctions of any kind, including for false denials under the law, unethical conduct, abuse of process and vexatious lawsuit, as well as denied this party of legal fees and expenses after years of litigation exclusively triggered by the other side in bad faith. Not only Judge MOUKAWSHER but previously Judges HARTLEY MOORE and HELLER refused, in the first place, to entertain and rule on Mr. IRAZU's outstanding motion to dismiss claiming lack of jurisdiction, illegal service of process, abuse of process and ancillary as of 3/2020. They just ignored it. None of this should have ever happened if the legal system had operated within the boundaries of the law. It has been years already and most of those funds remain in escrow at the local district court. Judge MOUKAWSHER's ruling of 4/7/2022 even talked of this party battling ***"outside forces ... he cannot defeat."***

[2] Appendix A, B and C.

correlation as well as animosity for it.  In fact, Mr. IRAZU was not allowed by the US District Court to further amend his complaint in order to update it due to all of the prior up to now (# 29, # 31).

    **4.**  Regarding the original federal complaint, Mr. IRAZU based it on different legal grounds –not exclusionary in themselves–: 28 U.S.C. § 1331, §1343; 28 U.S.C. § 1332 (a) (diversity of citizenship); and 42 U.S.C. § 1983.

    **5.**  As it transpires from Mr. IRAZU's complaint and first amended complaint (# 17), the issue of abuse of process,[3] with or without criminal activity, can take place in two ways: with the complicity of State actors in the legal system, or with the innocence of the overall legal system.  In the latter the legal system is just another victim of it; while in the prior the legal system becomes a victim due to the illegal behavior of State actors within it.  Either way, it is evident that the victims or active participants of such abuse of process are not in an impartial position to judge it.

    **6.**  The "innocent case" unfolded when Ms. OLIVA surreptitiously sued Mr. IRAZU for divorce in a fraudulent and concealed fashion in Spain in 2016 –seeking the duplication of financial benefits and custody orders over three minor

---

[3] Abuse of process is not a novel tactic, and it has been defined as the *"the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process.", in re, Board of Education v. Farmingdale*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (N.Y. 1975).

children in foreign land, while relying on false data and documentation–, only a week after executing a Stipulation before the local family court in Connecticut by which the parties settled their financial differences and reinforced their coparenting duties.[4]  The Spanish court did not know Ms. OLIVA had divorced Mr. IRAZU in the US and a mere *exequatur* process (registration of the US divorce decree and orders) was needed in Spain.  Mr. IRAZU fortuitously discovered this criminal scheme, then litigated in Spain, such alternative divorce process was declared null and void, and the US divorce decree and orders were finally registered there in 2019.  The Spanish court was not responsible for it.

7.  As to the "guilty case", it has been unfolding before the local Connecticut courts for years. There is an ongoing criminal scheme, the local courts know it, and they count on it being sealed without facing any liability for it.  Ms. OLIVA and Mr. COLLINS are refusing to settle the local case and have made no serious offer, only $50,000 so far.  They are relying on getting the local proceedings through in less than a year.  During 2022 Ms. OLIVA signed a 2-year lease contract in Greenwich, with just another year to go.

8.  In 2021 Mr. IRAZU was a resident of New York (2017-2021), and Ms. OLIVA and Mr. COLLINS, among all other potential defendants, were long-

---

[4] All against the unanimous precedent from the US Supreme Court of Justice, *in re, Chafin v. Chafin*, 568 U.S. 165 (2012).

standing residents of Connecticut.  As of 2022 Mr. IRAZU has been a full-time

resident in Buenos Aires, Argentina.  The diversity of citizenship is complete and

the amount in dispute is in the millions of dollars.

**9.**  Putting aside plain criminal activity, something argued by Mr. IRAZU for

years before Connecticut courts (both the family district court and the appellate

court) without any sucsess, such abuse of process was fueled by defamation –as a

conduit for it–, which included ideological positions that go from police brutality

and persecution to reproachable unconstitutional violations within the local legal

system.  Such defamation is contradictory in itself but embraced any possibility

–on record– that could enhance or advance Ms. OLIVA's civil claims by the hand

of Mr. COLLINS; namely:  this party is an abuser of women[5] and children (a

---

[5] "THE COURT: The charges, whatever they were, have all been expunged. The file has been sealed. The arrest record of your arrest should be expunged also. I don't know whether you have to move – file a motion for that, but – … MR. IRAZU: Thank You, Your Honor.", Official Transcripts, Divorce Trial Judge Dennis Harrigan, 6/4/2010, p. 93.  *"Motion for Return and Destruction of Fingerprints, Arrest Card, Photographs, Physical Description, Electronic Records and Ancillary Documentation"* of 1/13/2012, # CRO90165772S, # CRO90168728S, *State of Connecticut v. Fernando Gabriel Irazu*, granted on 1/30/2012 by Judge Richard Comerford, Superior District Court of Stamford/Norwalk, State of Connecticut.

Hispanic "macho", so to speak)[6] and mentally insane;[7] an anti-Semitic or

Argentinean Nazi (when most if not all critical judges and clerks so far have been

Jewish, with Jewish background, and/or women and minorities);[8] someone who

---

[6] "February 20, 2009. Dear Mr. Irazu, This letter is to inform you that the *Department of Children and Families* has completed the investigation that was reported on 1/8/09. The allegations of physical neglect will not be substantiated against you. This is based on interviews with you, your family, and services connected with you. At this time your case will be closed as of the date above, with the following expectations: Ensure that you provide adequate supervision, care, and attention to your children xxxxx, xxxxx and xxxxx Irazu. Ensure that you will not expose your children to any domestic violence. For you and children's mother follow up with individual and marriage counseling. Should you have any questions or concerns regarding the outcome of this matter, please feel free to contact me at the number listed below. Respectfully," Letter of 2/20/2009 from the *Department of Children and Families*, State of Connecticut, Ethel Moore, Social Worker-Investigation.

[7] "THE COURT:  You can certainly testify about everything that's happened to you … MR. IRAZU: And -- yes.  And to conclude, he certainly has, as a former head of investment banking at JP Morgan for an entire region and division, a pretty good understanding of what can happen to a professional *who is considered like a criminal. Mentally insane, and an abuser.*  So -- which [are] *the allegations that I've been dealing with since my divorce.  And whether Mr. Collins is concerned about protecting certain groups, I have no intention of suing anybody. I could have already done so.*  THE COURT:  Now, we're not talking about that.  MR. IRAZU: Okay.", Official Transcripts, Hearing before Judge Donna Heller, Superior District Court of Stamford/Norwalk, State of Connecticut, 7/11/2017.  It should be noted that Mr. IRAZU underwent multiple psychiatric and psychological evaluations, court-mandated and voluntary, and they all indicate that he is a sane and peaceful man who never posed a risk to anybody, including himself, with a standard personality and a deep concern for his children.  More than 15 years serve as proof of such technical appreciations (# 13, # 14, # 15).

[8] "ATTORNEY COLLINS: … if one reads *In Re Martin-Tragona*, one case almost the repetitiveness of this; everybody is against me because of what I am.  In *In Re Martin-Tragona* the basis was everything involved is Jewish; the judge is Jewish;

must take care of his children since he is an outstanding loving father;[9] and

someone who can sue the police and others from Greenwich or Connecticut

overall, in light of a civil rights action (precisely what the US District Court

expected) because he was born in Buenos Aires, Argentina.[10]

---

the bankruptcy trustee is Jewish, the clerk is Jewish, the lawyers are Jewish … And now this is where we get to where we can't allow for any reason someone like Mr. Irazu to come in to this court and claim that somehow, Judge Heller is against him because he is a Caucasian male, a naturalized U.S. citizen pursuant to, quote unquote, extraordinary abilities under U.S. immigration laws. Born in Buenos Aires, Argentina, South American -- THE COURT: I did -- I read it. ATTORNEY COLLINS: …I think Judge Heller was a model, a model of neutrality. And when the other side –somebody's ultimately not going to win. And just because you don't win doesn't mean that the judge is against you; it means you didn't carry your burden or you didn't have a good case coming in.", Official Transcripts, Representation of Kevin COLLINS before Judge Robert Genuario, Superior District Court of Stamford/Norwalk, State of Connecticut, 4/23/2018.

[9] "COURT: ...There is no question in my mind that they're both loving parents and that's been clearly demonstrated in this courtroom...", Official Transcripts, Divorce Trial before late Judge Dennis Harrigan, Superior District Court of Stamford/Norwalk, State of Connecticut, 6/16/2010. "Q: You [Ms. OLIVA] stated under oath that my children want to be with me. Why is that? A: I think it's pretty obvious. You are their father and they love you as a father.", Margarita Oliva Sainz de Aja, Official Transcripts, Divorce Trial before late Judge Harrigan, Superior District Court of Stamford/Norwalk, State of Connecticut, 6/10/2010. *"Throughout the years, Fernando has been a good husband, has shown an exceptional dedication to his family and is an outstanding father",* Official Letter from Margarita Oliva Sainz de Aja to Judge Robert John Malone, Superior District Court of Stamford/Norwalk, State of Connecticut, 4/2/2009.

[10] Idem 5, 6, 7, 8; "ATTY. COLLINS: So the problem that we have is is that Mr. Irazu, from what I heard him say, is trying to connect up things that happened many years ago and wants to extrapolate from that information -- MR. IRAZU: No. ATTY. COLLINS: You know -- THE COURT: Right.", Official Transcripts,

**10.** Mr. IRAZU is a US, Argentinean and Spanish citizen who has spent almost 30 years in America (more than half of his life). He is a white Caucasian, born and raised in Buenos Aires, with a standard personality, deep conservative beliefs of a lifetime, and, as a result of his working effort in the US, he was placed within the top 1% income earners in this country in 2008. He graduated from Harvard Law School in 1995, and after a couple of years of practicing securities law with English and US law firms in New York City he became an investment banker. In his country of origin, before coming to the US, he clerked for the Public Defender before the Supreme Court and Federal Courts, worked as a corporate lawyer, and taught law. Since mid-2021, Mr. IRAZU has been involved on a *pro bono* basis in matters of public interest: he secured the conviction for unethical misdeeds, along with the President of the Association of National Magistrates and various ex-presidents, of the attorney representing the president, vice-president and minister of economy of Argentina; as well as he is a private prosecutor (*querellante*) against the president of Argentina for criminal violations of the Covid 19 pandemic-related normative –an action currently pending before the local Supreme Court of Justice–; among various others. He is also finalizing his PhD thesis on comparative constitutional law and philosophy.

---

Hearing before Judge Donna Heller, Superior District Court of Stamford /Norwalk, State of Connecticut, 7/11/2017.

**11.** In 2009, Mr. IRAZU was reluctantly engulfed in the highly contentious US divorce and family proceedings that ruined his life. This party does claim who he really is played a role in the aforesaid defamation. From the perspective of an unequal treatment under the law, Mr. IRAZU argued the case fell under *in re*, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886),[11] *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S.__ (2018),[12] as well *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012)[13], now also encompassing *303 Creative LLC*

---

[11] This precedent is known and marked by an "evil eye and a heavy hand", namely from the State actor, whoever that person is, that seeks for an illegitimate reason to manifest his or her biases and hurt someone in particular, in this case his fundamental rights as a father seeking justice, his liberty from abusive legal proceedings, as well as the fruit of his own working effort, his patrimony. This is in fact the core holding of this long-standing precedent, the evilness of purposely denying justice to someone and using whatever excuse available for it.

[12] This precedent goes to the element of deep procedural State hostility, within the Connecticut legal system, against someone due to his beliefs and/or defamation against such person. We are talking of more than 15 years of non-stop litigation, including an alternative fraudulent and concealed divorce process in Spain, the attempt to extirpate his entire patrimony, and the on-going delayed proceedings causing deep harm and damages. It is the "undue process" now getting to plain stealing via a fraud sealed by local court rulings.

[13] In this case the discriminatory element was present and recognized by the US Court of Appeals for the 7th Circuit, and a white family was compelled to sell their home and move out of town due to harassment from certain motorcycle-gang. However, the court did not find the police liable towards the victims because there is no obligation to provide private security to someone in particular 24/7. In Mr. IRAZU's case at inception, we are talking precisely of certain police officers, firefighters and members of the local legal system, among others, assuming such a role directly in favor of a woman who had filed criminal charges against her husband in anticipation and/or in the midst of divorce proceedings last 2009-2010.

*v. Elenis*, 600 U.S.____ (2023).[14]  As mentioned, three *Petitions for Writ of Certiorari* were filed by this party with the US Supreme Court between 2013 and 2019.[15]

**12.**  On 5/5/2021, when Mr. IRAZU filed his initial federal complaint, he requested as an attorney acting *pro se* to be allowed by the US District Court to file electronically (# 4); and he also requested to be allowed to proceed *in forma*

---

In fact, the police were guilty of brutality and various misdeeds, including unconstitutional prosecutorial delays, and some judges residing in Greenwich and/or the area lending a blind eye to it, while others taking an active role in the civil defense of a now single-mother versus a defamed father –needless to say Judge Donna HELLER, who is a long-time resident of Greenwich. This is how the defamatory scheme began with mixed ideological leaning up to now.

[14] The holding of this precedent goes to someone not being pressured or coerced by the State into doing something that his conscience actually prevents him from doing.  Mr. IRAZU went through an ignominious divorce process and abusive legal proceedings for 15 years in two Continents that destroyed his life –professionally, financially, and even affected his health– and hurt his children. He has been open to a fair settlement out of his moral convictions to put an end to this criminal abuse of process, and cannot be coerced into domination by the other side through the State platform denying what's due to him –his own patrimony fruit of his exclusive working effort.  The government cannot actively take away from him, in an unequal fashion, what's his because of ideological reasons or otherwise; after also treating him in an unequal fashion on various fronts for many years, particularly as a father on what's dearest to him, his own children, as long as it ended up hurting them.  Mr. IRAZU would have declared himself guilty of anything under the sun to prevent his children from being treated as collateral damage, and regardless of his disposition for that not to happen the other side did everything possible for such to be the case.

[15] Appendix A, B, C.

*pauperis* due to the devastating financial and patrimonial impact of the issues mentioned in his complaint (# 2), putting aside his health.

**13.** Judge Victor BOLDEN referred the matter to US Magistrate Robert SPECTOR for initial review (# 8). Mr. IRAZU did not consent to such referral.

**14.** On 5/25/2021, US Magistrate Robert SPECTOR rejected any legal grounds but a §1983 claim in order for this party's complaint to proceed in federal venue (# 10). The ruling also stated in footnote (1) the state actor that could be involved, Jeffrey Alan DIAMOND ("Mr. DIAMOND"), Family Caseflow Coordinator at the Stamford Courthouse in Connecticut, despite several other public officials being involved at different levels and from various perspectives up to now, including but not limited to Judges Donna HELLER, Margarita HARTLEY MOORE and Thomas MOUKAWSHER, as well as Law Clerks Carl CICHETTI and Luke MATYI,[16] among others. As mentioned, all within a scheme

---

[16] The story of this duo is hard to forget and forgive. Carl CICHETTI, the Chief Law Clerk at the Connecticut Appellate Court, was known by Mr. IRAZU several years ago when he was another clerk and this party had to submit an appellate brief. When Mr. IRAZU was handling the brief to the Case Manager at the counter, Mr. CICHETTI suddenly appeared, took it in his hands, and pretended to throw it away in the trash-bin –in fact, the final outcome every single time from 2012 to 2019. Despite an acting Case Manager and another Chief Law Clerk at the time, Mr. CICHETTI decided to formally send an email to Mr. COLLINS (without copy to Mr. IRAZU) asking him *sua sponte* whether he intended to respond to one of Mr. IRAZU's requests –against it, obviously, otherwise why bother–, in principle on behalf of the Court –available evidence–, which this party got to know because of Mr. COLLINS's response. They were working as a team. The Case Manager then explained to Mr. IRAZU that the "court can do whatever it wants."

entailing criminal liability both in Argentina and the United States of America that creates an international conflict of laws.[17]  As argued by Mr. IRAZU, lack of jurisdiction and criminal conduct are grounds for civil liability to any local officer in the legal system.

**15.**  The civil process before the local courts in Connecticut has been stalled precisely because of these ongoing federal proceedings; all relevant officers at the

---

And it cannot, indeed. The problem is that some of these people do not understand that they are neither above the law nor immune from it, that they are in contempt for saying so and acting in such a way with impunity, and that they should be punished for their despicable behavior. Mr. MATYI was appointed as the current Case Manager by Mr. CICHETTI, and after this party being declared indigent by federal court and having a waiver for all filing fees at the local level, they made this party pay filing fees and send paperwork via private courier from Argentina when there was no real need, as well as rejected multiple (uncountable) filings in sequence, objecting the number of lines and then other minutiae, among several other unacceptable practices. In the end, Mr. CICHETTI rejected by himself any and all possible sensible requests posed by Mr. IRAZU (this party does not even know who are the judges signing *en banc* orders, if any at all), while Mr. MATYI refused to pick up the phone because his feelings were somehow hurt or offended. And Mr. CICHETTI only did so after this Court accepted for this party to be where he is at this level. They do have fun; they do find it entertaining.

[17] Mr. IRAZU is also subject to the laws of Argentina as well as the jurisdiction of the Interamerican Commission and Court of Human Rights. Prevaricate (court rulings purposely sealing a criminal injustice against applicable law) is a crime in itself subject to prosecution per article 269 of the Argentinean Criminal Code. Under Continental Law, Mr. IRAZU can be the private prosecutor (*querellante-victim*) activating the criminal action from allegations/charges to sentence of imprisonment. The alleged triangular cross-border fraud activates 18 U.S.C. § 1341 and articles 172, 182 and ancillary of the Argentinean Criminal Code, and the modality of resorting to foreign individuals within such a motive and scheme triggers by itself, from the US perspective, the Foreign Corrupt Practices Act (FCPA).

district court and appellate court level are acting in sync and following the progress

of these simultaneous proceedings in order to determine how to proceed

themselves, irrespective of the ongoing wrongdoings which are of criminal nature.

More than a million dollars are being held by the local family court and most of

them have been taken away from this party against applicable law and a minimal

sense of fairness.  It is a criminal fraud being sealed by local court decree

punishable by criminal law domestically and internationally.

**16.**  Going back to Judge BOLDEN and US Magistrate SPECTOR, if the

original complaint from 5/5/2021 were not amended in order to include State

actors –Ms. OLIVA and Mr. COLLINS were not enough to give access to federal

jurisdiction under any grounds, including § 1983–, it recommended that it should

be dismissed "without prejudice."  The ruling allowed Mr. IRAZU to proceed *in

forma pauperis*; meaning the complaint was not deemed frivolous or malicious,

and ancillary under federal law (# 9).[18]  It should be noted that Judge BOLDEN

---

[18] "The same statute that authorizes the Court to grant in forma *pauperis status* to a
plaintiff also contains a provision that protects against the abuse of this privilege.
Subsection (e) provides that the Court "shall dismiss the case at any time if the
court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to
state a claim upon which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).",
US Magistrate Robert Spector, Ruling on the Plaintiff's Motion for Leave to
Proceed in Forma Pauperis, US District Court for the District of Connecticut,
5/25/2021.

found that the truthfulness of the tragic facts and ongoing injustice endured by this party was not in question (# 29).[19]  None of this has been questioned or disputed; there is a significant amount of evidence on record (# 13, # 14, # 15), despite the fact Mr. IRAZU could not provide more evidence electronically from Argentina.

17.  Mr. IRAZU then filed objections and requested clarifications regarding the possibility of his complaint attaining federal jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1332 (a) (diversity of citizenship).  In other words, irrespective of a 42 U.S.C. § 1983 claim being a proper ground to attain federal jurisdiction in this case, Mr. IRAZU respectfully inquired why he should be compelled to pursue only such a route when others were equally available, among other issues (# 11, # 12). These grounds are not necessarily exclusionary in themselves. This party also filed a Motion to Seal with numerous selected evidence (# 13, # 14, # 15).

18.  Moreover, on 6/2/2021 Mr. IRAZU wrote a letter to both Judge Victor BOLDEN and US Magistrate Robert SPECTOR informing them that he was relocating to Buenos Aires, Argentina, because of the impact of the issues described in his complaint; highlighting the need to have the possibility of

---

[19] Idem 24.

producing electronic filing; and delivering a USB flash drive that contained such selected evidence (already paper-filed).[20]

    **19**.  On 6/15/2021, Judge Victor BOLDEN adopted the recommended ruling from US Magistrate Robert SPECTOR without any further consideration.  The US District Court also denied the petition for electronic filing, all objections, requests for clarifications, and the motion to seal (with evidence) as moot (# 16).  Please note such evidence contained sensitive information about children, health and financial records, as well as other information justifying the motion to seal in itself –never a moot issue.  Additional time was granted for Mr. IRAZU to submit an amended complaint.

    **20.**  On 6/21/2021, Mr. IRAZU submitted the Amended Complaint, as requested by US Magistrate Robert SPECTOR and Judge Victor BOLDEN (# 17).

    **21.**  Eight months later, on 2/15/2022, Judge Victor BOLDEN once again referred the case to US Magistrate Robert SPECTOR (# 18).

    **22.**  In turn, on 3/8/2022, US Magistrate Robert SPECTOR recommended the dismissal of this party's claims "with prejudice" (# 19).  Apparently, the US District Court took issue with Mr. IRAZU's reference to Stamford Judge Donna HELLER, a resident of Greenwich, Connecticut –the locality where the underlying events took place–, and someone who condoned the already mentioned

---

[20] Appendix D.

international fraudulent and concealed alternative divorce process in Spain, which was triggered by the other side only a week after all parties had settled their differences before Judge Erika TINDILL at the local court last 6/10/2016.

**23.** Judge HELLER's rulings basically implied a *de facto* sole custody award to Ms. OLIVA, when in fact both parties enjoyed joint legal custody, with the following message: *"you can do whatever you want against the law, it doesn't matter, I will take care of it for you."* And Ms. OLIVA certainly got that message and acted accordingly, and Judge MOUKAWSHER, after Judge HARTLEY MOORE, also filled Judge HELLER's shoes.[21] Children did get hurt because of her rulings and those affirming them. When the government tries to play God, more often than not tragedies in the lives of people ensue.

**24.** On 3/14/2022, Mr. IRAZU filed objections and ancillary (# 20, # 23), which were rejected by Judge Victor BOLDEN because email or fax-filing from Argentina, while acting *in forma pauperis,* was not allowed (# 22). No ruling on the amended complaint came right after from Judge Victor BOLDEN.

**25.** On 8/22/2022, Mr. IRAZU filed a motion to transfer, disqualify and recuse on objective grounds both US Magistrate Robert SPECTOR and Judge Victor BOLDEN (# 24).[22] Mr. IRAZU asked for an independent panel of judges to

---

[21] Appendix B.

[22] Fed. R. Civ. P. 72; among others.

rule on the motion to disqualify.  At the same time, this party filed another motion requesting to be able to file electronically (# 25).

**25.**  Four months later, on 12/22/2022, Judge Victor BOLDEN denied the motion to recuse by himself (# 24); and adopted the recommended ruling of 3/8/2022 from US Magistrate Robert SPECTOR dismissing the complaint "with prejudice" (# 27).  Once again, Judge Victor BOLDEN deemed this party's request to participate in electronic filing as moot (# 27).

**26.**  On 1/17/2023, Mr. IRAZU filed motions pursuant to Rules 52 (b) (# 29) and 60 (a) (b) ( # 28), with the pertinent memoranda, as well as another motion to be able to file electronically (# 30).  This party pleaded to be able to amend his complaint further in light of new developments within the local court system and eventually add more State actors.  Mr. IRAZU also made clear there was an ongoing criminal fraud that needed and still needs rulings from the local system to take place.  As in Continental Law, the opportunity to revise a judgment by the same judge is preferable, shows good disposition, and serves the principle of judicial economy; and the appeal is only taken in lieu of a final adverse ruling.  Mr. IRAZU attempted for Judge BOLDEN to revise his rulings under applicable law.

**27.**  On 4/7/2022, Judge Victor BOLDEN denied those motions, and once again the request for electronic filing was deemed as moot (# 31).  Evidently, such question had been mooted and resuscitated many times for over two years

–ironically, electronic filing is now mandatory before this Court.  Judge Victor

BOLDEN ruled that there is "absolute immunity" for any clerk in all cases,

including the one this party was compelled to sue by the US District Court in order

to attain federal jurisdiction.[23]  It also meant Ms. OLIVA and Mr. COLLINS were

not enough themselves for a § 1983 claim, and no other grounds were available to

this party to attain federal jurisdiction.  Once more, Judge BOLDEN added that the

truthfulness of the facts laid out by this party was not in question, but the

simultaneous ongoing fraudulent scheme contemplated under the law was not of

his concern.[24]

---

[23] "Mr. Irazu's Section 1983 claims fail because, as was thoroughly addressed in
Judge Spector's recommended ruling, Mr. Diamond is immune from suit in his
official capacity under the Eleventh Amendment and in his individual capacity
based on absolute quasi−judicial immunity ... Even if Mr. Diamond was not
immune from suit, Mr. Irazu has failed to plead sufficient facts to show that Mr.
Diamond acted in concert with the private citizen Defendants such that they may
be held liable under Section 1983... In light of Mr. Diamond's immunity from suit,
it would be futile to allow Mr. Irazu leave to amend the Complaint a second time.",
Judge Victor A. Bolden, 12/22/2022, Order Dismissing the Complaint.

[24] "Rule 52(b) permits a court, on a party's motion, to "amend its findings—or
make additional findings—and . . . amend the judgment accordingly." Fed. R. Civ.
P. 52(b)… Mr. Irazu appears to argue that the Court has made findings of fact in
support of its prior rulings…. Additionally, Mr. Irazu argues the Court has not
considered additional events that have happened since he filed the Amended
Complaint on June 21, 2021…In Magistrate Judge Spector's recommended ruling,
which this Court adopted, the facts alleged in Mr. Irazu's Amended Complaint
were considered as true…[…]… To the extent Mr. Irazu's motion for
reconsideration also seeks leave to amend the Complaint, this request is denied ...
(requesting that "the Court open the present case . . . [and] allow the Plaintiff to
amend his complaint in light of more recent events"). Even considering the

**28.**  On 4/24/2023, Mr. IRAZU timely filed a Notice of Appeal insofar all of the prior rulings from US Magistrate Robert SPECTOR and Judge Victor BOLDEN (# 32).  Ultimately, Mr. IRAZU's complaint was dismissed with "prejudice" for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii).

## SUMMARY OF THE ARGUMENT

The present case poses novel issues of law to the Court as a result of its fairly unique factual background, geographic diversity, as well as conflict of laws insofar local vs. federal jurisdiction as well as internationally.  From a constitutional standpoint, the right to be heard (also called at the international level as the right to access justice or the right to an effective jurisdiction), including the elementary concept of mootness, all as part of the guarantees of due process in tandem with the equal protection under the law, insofar property and parental rights (of fundamental nature) are at stake.  The aforesaid calls for strict scrutiny under both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

---

additional facts included in Mr. Irazu's motions, any amendment would be futile because Mr. Irazu cannot cure Mr. Diamond's immunity from suit by pleading additional facts.", Judge Victor A. Bolden, 4/7/2023, Ruling and Order of Motion to Amend, Motion for Reconsideration, and Motion for E-filing

As a matter of law, Mr. IRAZU argues that he was erroneously denied access to federal jurisdiction, needless to say within a factual context in which legal proceedings within the Connecticut legal system defied rulings from the US District Court of Connecticut –to begin with, its ruling of indigency as far as this party is concerned– and both the local district court and appellate court appear to work in tandem while following up the simultaneous developments of these proceedings in federal venue –of evident concern, at the personal level, to various officers within the Connecticut legal system. The latter cannot ponder and judge their own involvement in proceedings marked by abuse of process and ongoing criminal activity sealed by their rulings.

This party has claimed and proven, from different perspectives, such abuse of process with criminal intent that requires rulings from the Connecticut legal system to be consummated. Those rulings at the district court level have already taken place during the 2022-2023 period. And it is logical to conclude, as a result of severe anomalies and prior rulings at the local appellate court during the same timeframe, that such criminal scheme will be affirmed.

Furthermore, the victim of the alleged ongoing criminal activity, Mr. IRAZU, is located outside the United States and its consequences also impact him in his current location, the Republic of Argentina. This matter is one of public

order under the laws of that sovereign nation,[25] on top of the legal consequences for those involved within our country, the United States of America.

In the formal issues presented to the Court, Mr. IRAZU puts forward the following arguments in a conclusive fashion: (i) this party was erroneously denied access to federal jurisdiction on multiple grounds; (ii) if the only available route to federal jurisdiction in this case is in fact a § 1983 claim and "State actors" exclusively mean judges, magistrates and clerks, there is no such a thing as "absolute immunity" when lack of jurisdiction and criminal activity prove otherwise; (iii) this party's due process has been violated; (iv) Judge BOLDEN and US Magistrate SPECTOR shall not intervene any further in these proceedings, if this party were to be given the opportunity to advance with his complaint; and (v) the US District Court's ruling must be reversed and this party's complaint admitted upon further amendments, among other pressing matters detailed below.

---

[25] Please note the recent precedent from the Court, *in re, United States v. Antonius*, No. 21-1083, 7-10-2023 (2d. Cir. 2023) is not secluded to our country, meaning that any of those involved in criminal activity within the United States vis a vis a victim of fraud and other crimes located in the Republic of Argentina, for instance, when it was in fact desired and sought after for the victim to be where he is (albeit irrelevant for this holding, though not the damaging impact), have more than enough ties to be subject to criminal prosecution there as much as in the United States. Depending on the forum of attraction and relevant anchor (where the victim is located), and specific prosecution (where the victim triggers the prosecution), extradition could kick in either way. Precisely the mirroring recognition of this precedent abroad, with the particularities under Continental Law, make it relevant to the present case.

## ARGUMENT AND STANDARD OF REVIEW

## I

**ISSUE I**: Should Mr. IRAZU's complaint have been admitted by the District Court against two private parties pursuant to 28 U.S.C. § 1331, §1343, and/or §1332 (diversity of citizenship), without any strict need for a § 1983 claim calling for "State actors"?  If strictly needed, can two private parties be counted as a State-actor for purposes of a § 1983 claim, both of them attorneys and one of them representing the other one while also acting as trustee of the Court?

Standard of review: *de novo*.

As a principle of law, Mr. IRAZU positioned his complaint on various grounds giving room for federal jurisdiction, not only a § 1983 claim.  He argues his constitutional rights of fundamental stature (mostly parental and patrimonial rights)[26] have been violated through the State platform; namely abuse of process in the current form of a criminal fraud, which requires decisions and rulings from the local legal system to be consummated.

As opposed to the already mentioned situation of the Spanish legal system, as a State-platform completely innocent of the misdeeds and crimes carried out by the other side in foreign land through an alternative fraudulent and concealed divorce process, the Connecticut legal system via certain individuals has been an

---

[26]Appendix A, B, C, D.

active participant of illegality. There is a major qualitative difference regulated through codification in the Continental system: it is a very specific crime called "procedural fraud", which is different from the plain civil abuse of process despite the fact that damages can be pursued as a result of both grounds.

Having stated the prior, it is of Mr. IRAZU's strict discretion who to sue, why and where. In the United States of America and not elsewhere, Mr. IRAZU only went after, so to speak, those who actively ruined and destroyed his life and chose to violate the law with impunity, those who triggered, abused, misused and ignited the State-machinery and not the machinery itself: Ms. OLIVA and Mr. COLLINS. The US District Court compelled Mr. IRAZU to go after the so-called State-machinery, to include Mr. DIAMOND, only to finally dismiss his complaint for failure to state a claim and "with prejudice" after already saying under federal law that his complaint was not frivolous or malicious[27] and that it should be eventually dismissed "without prejudice", if not amended.

Also as matter of law, Mr. IRAZU is of the opinion that the US District Court is wrong under the assumption it is right in the sense that the only claim available to this party is a § 1983 claim. Indeed, taking as true the premise that the only available ground for Mr. IRAZU to pass through the door of federal jurisdiction is a § 1983 claim, the fact of naming only Ms. OLIVA and Mr.

---

[27] Idem 18.

COLLINS as defendants should be enough for it.  Not only the US District Court rejected any clarification as to the other legal grounds available to Mr. IRAZU to access federal jurisdiction, but it constrained and limited a § 1983 claim to adding more parties under the following erroneous assumptions per applicable law: (i) Ms. OLIVA and Mr. COLLINS cannot be "State actors" for purposes of such a claim; and (ii) court officers, being law clerks, judges or magistrates always enjoy absolute immunity and cannot be held accountable in civil forum.

As a matter of fact, Mr. COLLINS was named as Trustee of the local court in 2010, receiving funds illegitimately sequestered from Mr. IRAZU's bank account without due process and in an unequal fashion.[28]  Mr. COLLINS quickly converted such role into the one of a highly contentious party counsel, without losing in time his "court-related fiduciary duties" to spend those monies in proper items under the law.  In 2016, Mr. COLLINS represented in court that those funds had been spent on certain child-support items, real estate taxes, and life insurance policy premiums.[29]

---

[28] Orders # 153 and # 155, D.N. FBT FA 09-4057168-S, Judge Robert J. Malone, Superior District Court of Stamford/Norwalk, State of Connecticut, 11/22/2010 (sequestration of $27,000 from Mr. IRAZU; modification of insurance policies in favor of Ms. OLIVA; designation of Mr. COLLINS as trustee of those funds).

[29] Plaintiff's Motions for Contempt and Oder Post-Judgment (child-support; educational support orders; and welfare) (# 204, # 204.01, # 204.02), D.N. FBT FA 09-4057168-S, Superior District Court of Stamford/Norwalk, State of Connecticut 12/2015

In other words, Mr. COLLINS was wearing two hats: as an officer of the court himself via his role as trustee,[30] and as an officer and commissioner of the court pertaining to his role as party counsel in front of an unrepresented party, Mr. IRAZU, who happens to be a lawyer but was not considered as such simply for Judge MOUKAWHSER to deny him of legal fees and expenses[31] after declaring Ms. OLIVA in contempt to court because of her own violations to applicable law, and due to Mr. IRAZU's professional performance during 2022[32] –and even

---

[30] "… a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other *third-party neutral*, unless all parties to the proceeding give informed consent, confirmed in writing", Rule 1.12 (a). *Former Judge, Arbitrator, Mediator or Other Third-Party Neutral*, Rules of Professional Conduct, *Connecticut Practice Book*, 2023.

[31] "The court finds it beyond reasonable doubt that its order was clear as to the listing price amount [$1,250,000]; that Ms. Oliva, an experienced attorney, understood the order; that she was fully capable of complying with it, and that Ms. Oliva intentionally disobeyed the court when she listed the property for $1,600,000. Therefore … the court finds Ms. Oliva in contempt of the court's order dated January 31, 2022 [without any consequences whatsoever except those lines, even to the possibility of rearguing such ruling of contempt, which was denied as to all of Mr. IRAZU's claims].", Memorandum of Decision on Motion for Contempt from Judge Thomas Moukawsher, Superior District Court of Bridgeport/Middlesex, State of Connecticut, 7/26/2022.

[32] "Mr. Irazu claims the court could award him attorney's fees. If he had paid any or owed any, the court might consider doing that. But he owes nothing and has paid nothing. He hasn't been represented by an attorney –even one working for free– so the court can't order fees to be paid.", Memorandum of Decision on Motion for Contempt from Judge Thomas Moukawsher, Superior District Court of Bridgeport/Middlesex, State of Connecticut, 7/26/2022. Almost a year later, on 7/14/2023, Mr. COLLINS extemporaneously appealed the ruling for contempt.

suggesting against the law that legal fees can be imposed on this party to deter any appeal process.[33]  There is no need for a lie detector to spot the numerous falsehoods in those rulings; just going through the record and reading the law.

Please note that a practicing attorney, representing a client in a specific case in court, is also considered an officer of the court under ethical and regulatory grounds in most jurisdictions, including Connecticut.[34]  Furthermore, Ms. OLIVA appeared by herself at different instances of the proceedings.  Ms. OLIVA is a

---

[33] "…[Ms. Oliva] was undervaluing the marital home that had to be sold when she thought she might acquire it, only to list it for a higher price when she realized it would be sold to a third party—going so far as to disobey a court order about the listing price…[…]… As for attorney's fees Ms. Oliva seeks against Mr. Irazu under General Statutes §46b-62, the court sees no reason to award fees at this stage of the proceeding...[…]…After the appeal, the court can review all the equitable factors that might bear on an award, including the outcome of the appeal and its impact on the parties' finances.", Order from Judge Thomas Moukawsher, Superior District Court of Bridgeport/Middlesex, State of Connecticut, 10/6/2022.

[34] "A lawyer, as a member of the legal profession, is a representative of clients, **_an officer of the legal system_** and a public citizen having special responsibility for the quality of justice.", Preamble, Rules of Professional Conduct, *Connecticut Practice Book*, 2023; "You solemnly swear or solemnly and sincerely affirm, as the case may be, that **_you will do nothing dishonest, and will not knowingly allow anything dishonest to be done in court, and that you will inform the court of any dishonesty of which you have knowledge; that you will not knowingly maintain or assist in maintaining any cause of action that is false or unlawful; that you will not obstruct any cause of action for personal gain or malice_**; but that you will exercise the office of attorney, in any court in which you may practice, according to the best of your learning and judgment, faithfully, to both your client and the court; so help you God or upon penalty of perjury. (General Statutes § 1-25 and annotations.), The Attorney's Oath, Rules of Professional Conduct, *Connecticut Practice Book*, 2023.

Senior Partner of DLA Piper, a seasoned attorney who has actively taken abusive

legal positions in two Continents for over 15 years, while also counting on her law

license both in the State of New York and the Kingdom of Spain.

Simply put it, Mr. IRAZU has defended himself in criminal and civil forums

in all of those jurisdictions and all of those years, while trying to protect the

wellbeing of his children and his parental rights.  These are two very different

things.  Mr. IRAZU has never initiated any baseless, vexatious and/or abusive

litigation.  In 2019 Judge Anthony TRUGLIA from the Connecticut legal system

honorably found and said so in writing after reviewing the entire record,[35] and right

before Mr. IRAZU was sued again by the other side in 2020.

In fact, Mr. COLLINS might have a keen monetary interest in this case,[36]

which he expects to settle via Mr. IRAZU's patrimony and the rulings from Judge

---

[35] "After a hearing on the plaintiff's motion, and *after careful review* of the history of the pleadings in this case, the court does not find good cause to grant the motion. … [ ] …. *the court does not find that the defendant has engaged in a protracted pattern of filing numerous intentionally vexatious, frivolous or repetitive motions*. The motion is denied.", Order from Honorable Anthony Truglia, Judge, Superior District Court of Stamford/Norwalk, State of Connecticut, 4/25/2019.

[36] "… realizing financial or other benefit from improper delay in litigation is not a legitimate interest in the client … because such actions diminish the vitality of our bar and erode the confidence of the public by allowing justice and civility to take a back seat to gamesmanship and guile.", *in re, Pavone v. West,* 22 Conn. App. 623, 632-33 (2004).

MOUKAWSHER and the Connecticut appellate court through Messrs. CICHETTI and MATYI. Mr. COLLINS was sent to do a "dirty job" while making easy money out of it, to run an "undue process", and he even suggested so on the record. This cannot be allowed, that "link" is illegal and repugnant, and those responsible must be held accountable for it.

Indeed, the private actor liability under a 42 U.S.C. § 1983 claim can be put forward. Mr. IRAZU believes the present case is about the State-platform itself via an abusive process with criminal connotations and a symbiotic relationship with public officers that requires judicial rulings to exert damage and consummate wrongdoings. The formal role of Mr. COLLINS and of his principal, Ms. OLIVA,[37] show the need for a significant state action out of certain public function, exercised jointly, showing the compulsion or coercion of the state power

---

[37] "It is also logical that where a lawyer and the lawyer's client are guilty of coordinated litigation misconduct, the court may sanction them both and either hold them liable jointly and severally, or allocate or apportion sanctions between them.', Richmond, Douglass, "Sanctioning clients for lawyers' misconduct – problems of agency and equity", *Michigan State Law Review*, 835 (2012), pp. 836-837. "…equates an attorney's signature on a pleading, motion, or other document with an "affidavit of merit."" In essence, the signature represents a certification that to the best of the attorney's knowledge "formed after reasonable inquiry," the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.", Axelberg, Tracy, "Sanctions available for attorney's misconduct: a glimpse of the other remedies.", *Montana Law Review*, Vol. 47 (1986), p. 96.

via abusive legal measures from the prior, as well as a clear nexus with improper

governmental goals through those officers.[38]

# II

**ISSUE II**: As a principle of law, do clerks, magistrates and judges enjoy

"absolute immunity" in all cases?  If not, should the complaint have been admitted

pursuant to a 42 U.S.C. § 1983 claim, and should Mr. IRAZU have been allowed

to amend it and to provide further evidence of an ongoing abusive criminal fraud

before local courts in Connecticut?

Standard of review: *de novo*.

As a principle of law, there is no absolute immunity for anybody in life,

neither a judge nor a judicial clerk.  Because criminal activity and/or acting

without jurisdiction can never be sheltered.[39]

---

[38]["a method for vindicating federal rights elsewhere conferred…"] *Baker v. McCollan*, 443 U.S. 144, n. 3 (1979); *Dennis v. Sparks*, 449 U.S. 24, 29 (1980); *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999); *Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir. 1983); *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003); *Johnson v. Knowles*, 113 F.3d 1114, 118 (9th Cir. 1996); *Brunette v. Humane Society of Ventura County,* 294 F.3d 1205 (9th Cir. 2002); *Lee v. Katz,* 276 F.3d 550, at 554 (9th Cir. 2002); *Rendell-Baker v. Kohn,* 457 U.S. 830, 842 (1982); *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996); *Blum v. Yaretsky*, 457 U.S. 991, 1004, (1982); *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001); *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 351 (1974); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961).

[39] *In re*, *Harris v. Harvey* 605 F.2d 330 (7th Cir. 1979); *Rankin v. Howard*, 633 F.2d 844 (9th Cir., 1980), cert den. *Zeller v. Rankin*, 101 S.Ct. 2020, 451 U.S. 939,

First, Mr. IRAZU argues a criminal fraud through abuse of process that can only take place and be consummated via clerk-related decisions and court-rulings within the judiciary. This scheme has already unfolded and it is clear that it can only be deterred via the federal route.

Second, Mr. IRAZU requested the local family-civil case to be transferred to federal venue last 8/2021; one of the judges, Margarita HARTLEY-MOORE, ignored the request flat-out; a second one, Donna HELLER, also ignored it and last 9/2021 transferred the case *sua sponte* to a judge of her like in a nearby town because she did not want her own performance being ventilated in federal forum;[40] and the third one appointed by the second one, Thomas MOUKAWSHER, in

---

68 L.Ed 2d 326 (a judge acting without jurisdiction, knowing there was no jurisdiction based on applicable law, when not a legal process and/or ruling from a US District Court); among various others.

[40] "The transfer of this case to the judicial district of Fairfield [Judge Thomas Moukawsher] will serve the interests of justice. Accordingly, the Court, *sua sponte*, hereby transfers this case to the judicial district of Fairfield." By order of the Court, Heller, J., Superior District Court of Stamford/Norwalk, State of Connecticut, 9-17-2021. C. Alvarado, TAC.

"THE COURT: I have to tell you that I do have to take issue with your statement that you're being discriminated against or not heard in this courtroom. […] As I told you, I'm not making any finding about contempt … […] … It's going to be before the Court in April … […] … ***Attorney Collins, is there anything, any questions*** -- ATTY. COLLINS: No, Your Honor. I have no -- THE COURT: -- ***that Miss Oliva has or anything*** -- ATTY. COLLINS: -- the ruling is clear. THE COURT: ***-- to be resolved? Okay.*** ATTY. COLLINS: Thank you, Your Honor." Official Transcripts, Hearing before Judge Donna Heller, 2/28/2017.

2022-2023 ignored and contradicted the ruling of indigency by the US District Court and the very same Court-orders and law that tell him he had no jurisdiction on certain matters and vis a vis federal court and his own appellate court.[41]

Third, in connection with clerks, namely Mr. DIAMOND and others from the Connecticut legal system: Do they always enjoy absolute immunity for all they do? The US District Court conceded in its own ruling they do not; it talked about "semi-absolute immunity" and quoted specific caselaw, only to come via a leap of faith to "absolute immunity" in its holding. If the US District Court believes clerks only enjoy "semi-absolute immunity" they certainly do not enjoy "absolute immunity", and thus they are subject to scrutiny in a civil lawsuit and/or criminal action because of their behavior and decisions.

A clerk going out of his way to hurt someone in particular, with clear discriminatory intent or biases, wanting the other side to win, picking judges for the occasion and for the benefit of the other side, setting and delaying hearings (months and years) that help the other side's case, ignoring the law, and conducting

---

[41] Idem 1. Judge MOUKAWSHER from the onset engaged in piecemeal litigation; and after his core rulings were appealed by both parties, he continued doing so while counting on the assistance of Messrs. CHICETTI and MATYI at the appellate court. Judge MOUKAWSHER could have simply ruled in accordance with the law, and if he had done it actually both parties would have secured more funds as a whole. Yet, Judge MOUKAWSHER chose this course of action after being appointed by Judge Donna HELLER, against federal law and jurisdiction, and against the very same applicable law to his own jurisdiction.

themselves with impunity, can amount to conduct sheltered by jurisdictional immunity?   Mr. IRAZU believes such can never be the case because it is not and cannot be part of their jurisdictional work. By default, it is excluded, must be excluded and shall be punished.

Therefore, Mr. IRAZU is of the legal opinion –a plain matter of law– that he should have been given the chance to prove his case under applicable law and based on plain judicial coherence, in light of the fact the US District Court ruled that his complaint would only be admitted in federal court pursuant to a § 1983 claim and no other that included a "State actor" –erroneously assuming Ms. OLIVA and Mr. COLLINS do not fall within such terminology under any parameters–; expressly pointed in the direction of Mr. DIAMOND as a "State actor"; ordered for this party's complaint to be amended and ignored any pleadings for clarifications regarding the other grounds opening up the federal venue in this case; and, as a matter of law, clarified that clerks do not enjoy absolute but semi-absolute immunity.  Regrettably, the US District Court denied Mr. IRAZU of such opportunity, finally ruling that the immunity is absolute, and without any chance for him to expand and amend his complaint as a result of simultaneous legal proceedings marked by lack of jurisdiction and criminal activity running amok.[42]

---

[42] "Judicial immunity does not extend to the actions taken by a judge in the clear absence of jurisdiction. … the focus is on subject matter jurisdiction rather than personal jurisdiction [*Ashelman v. Pope*, 793 F.2d 1072 (9th Circ. 1986) (en banc);

## III

**ISSUE III**: Has Mr. IRAZU due process been violated at the District Court level?

Standard of review: *de novo*.

The due process and equal protection clauses of the Fourteenth Amendment are safeguards or guarantees. People usually call them rights but they are essential safeguards and guarantees because they shelter a fundamental right. They are predicated from a fundamental right that revolves around the trinity of *"life, liberty, and the pursuit of happiness."* Under Continental Law, the core part of the constitutional course is usually known as "constitutional rights and guarantees" –non structurally-related. And a fundamental right is the recognition by human law of the immediate conclusions coming from our natural reason that help us distinguish right from wrong.

Under common law, a right usually needs a law to be predicated from. Within the aforementioned constitutional trinity, the Supreme Court conceived as fundamental rights those of parental nature (along with consequential personal and religious beliefs) under the Fourteenth Amendment, so critical in the underlying

---

*Green v. Maraio*, 722 F.2d. 1013 (2nd. Cir. 1983)]", Shaman, Jeffrey, "Judicial Immunity from Civil and Criminal Liability", *San Diego Law Review*, Vol. 27:1 (1990), p. 7; idem 17, 39.

and present cases,[43] apart from those of patrimonial nature also sheltered elsewhere[44] in the absence of a primal precedent.  In sum, those pillars of due process and equal protection operate sustaining those fundamental rights in various parts of the US constitution.

In a nutshell, this is the case made by Mr. IRAZU as a result of abuse of process as well as criminal and unethical activity against him that transgressed those fundamental rights, in detriment of those safeguards or guarantees, through the State-platform represented by the Connecticut legal system.  Such abuse of process implicitly and expressly means that Ms. OLIVA and Mr. COLLINS received a preferential or unequal treatment when compared to the one dispensed to Mr. IRAZU –as a party and a father in certain *litis*–; and in the process of favoring the other side this party's due process was unavoidably shattered in pieces.  It is not unusual in the US to read cases at the Supreme Court level as if the equal protection clause were somehow detached from the due process one,

---

[43] Appendix A, B, C.

[44] Appendix B.  For instance, the Supreme Court *in re, Timbs v. Indiana*, 586___ (2019) held that the Excessive Fines Clause is incorporated against the States via the Fourteenth Amendment, when the government illegitimately tries to fine an individual (a criminal under this precedent) somehow as a side-token.  In the present case, Mr. IRAZU is at odds with some local rulings extirpating most of his patrimony without valid legal grounds vis a vis someone like Ms. OLIVA, who happens to be wealthy as a result of his own marital contributions, what she inherited, and what she produced as a Senior Partner at different top-notch international law firms.

when an unequal treatment tends to imply, more often than not, a due process

violation.[45]

  After two years of simply expecting for his complaint to be admitted, Mr.

IRAZU claims his due process was transgressed by the US District Court itself,

needless to say after denying him of the basic request to be able to file

electronically, as an attorney and someone declared indigent by such same court,

who is currently living in South America more than 5,300 miles away.  All in all,

after the US District Court compelled Mr. IRAZU to amend his complaint, only to

unexplainably dismiss it more than two years later, as described *supra* and further

elaborated *infra* in the context of this party's request for disqualification of Judge

BOLDEN and US Magistrate Robert Spector.

---

[45] One clear example of such constitutional dynamics is present, *in re*, *Skinner v. State of Oklahoma, ex rel. Williamson* 316 U.S. 535 (1942), in which the right to procreation and to marry were exalted as fundamental rights.  Having said that, although the ruling on the issue at stake was unanimous, in our opinion the concurrences got it right and not the majority opinion.  It was a due process issue, which carried an unequal treatment, and the lack of those safeguards trampled in the end those fundamental rights. Justice Jackson saw that correlation, and Justice Stone focused on the due process aspect of it –the two concurrent opinions to the one written by Justice Douglas from the perspective of solely unequal treatment.

# IV

**ISSUE IV**: Should Judge Victor A. BOLDEN and US Magistrate Robert
SPECTOR have been disqualified from intervening in this case?

Standard of review: *de novo*.

As a litigator, Mr. IRAZU has requested the disqualification of judges in
different countries and jurisdictions, but always on objective grounds and through
the proper channels. Mr. IRAZU also secured the conviction of an attorney for the
president of Argentina on ethical grounds for decimating the reputation of federal
magistrates in the media and affecting the independence of the judiciary.
Currently, Mr. IRAZU has a criminal case at the Argentinean Supreme Court
against the president of Argentina that also includes the disqualification of a
federal judge on objective grounds, among others of similar nature.

Having said the prior, Mr. IRAZU also understands that in the US a request
for disqualification is a sensitive issue that some judges, at the very least in
Connecticut courts, take on a personal basis. And when the issue of
disqualification gets to the Connecticut appellate court as a separate matter,
Messrs. CICHETTI and MATYI *sua sponte* consolidate it with the substantive one
even without any party motion asking for it –at the very least in Mr. IRAZU's case
and against his due process objections–, something not mandatory under the law,
making sure there is no room in any brief or oral argument to fully embark on

those issues.[46]  Mr. IRAZU was denied of such opportunity and the "evil eye and a heavy hand" previously mentioned here was in part related to his request for disqualification of Judge Donna HELLER.[47]

This should never be the case because a request for disqualification is a safeguard for all parties involved, including judges.  It is an elementary human right that keeps the system clean.  And when it gets to US Magistrate Robert SPECTOR and Judge Victor A. BOLDEN, Mr. IRAZU made his case on objective grounds: a number of issues that have no reasonable explanation under the law and follow the procedural description outlined above.  It is also true that Judge BOLDEN had a very prolific litigating experience before being appointed as a judge –something that should be seen as a plus–, but a very specific view as to how a judge should approach his role and exclusive issues that he wanted to advance from the bench.[48]

---

[46] "(3) The Appellate Court, on motion of any party or **on its own motion, may** order that appeals pending in the Appellate Court be consolidated.",  § 61-7, Joint and Consolidated Appeals, *Connecticut Practice Book*, 2023.

[47] Appendix B.

[48] "During the senate confirmation hearings to become a federal judge, Mr. Victor Bolden stated that *"I believe unequivocally in the rule of law. It is essential to this nation's success and I am committed to maintaining it. If confirmed, I would only issue decisions grounded in precedent and the text of the law, rather than any ideology or other motivation"*; all within the context of formal questions and answers in writing as a result of some of his prior ideological statements indicating that *"[judges] should tip the scale on behalf of demographic groups"* instead of

So it happens that Mr. IRAZU was not in the category of preferred plaintiffs Judge BOLDEN had indicated, and some of the judicial decisions rendered in this case are very hard to assimilate. For instance, the US District Court correctly ruled this party is indigent; he was compelled to leave the country where he had lived for almost 30 years because of the impact of all issues that prompted this litigation. But Judge BOLDEN denied this party with the possibility of producing electronic filings from more than 5,300 miles away in South America –Judge BOLDEN only allowed filing by mail. Mr. IRAZU had to resort to more debt or request someone to pay for it and assume such debt to produce filings for approximately two years. Voluminous evidence could not be filed in such a way from Argentina.

Unexplainably, Judge BOLDEN deemed all of this party's requests, including the one for electronic filing, as moot. Multiple times; showing in itself that an issue is not moot because a judge says so. The Supreme Court has recurrently said that certain issues are never moot (reputation, consequences out of

---

following the law without prejudice, as well as *"[b]lack men must take on the awesome task of saying to this society, which is dominated by a white patriarchy, that it must change drastically and that they will not cooperate in the continued oppression of women",* while later clarifying that the prior *"statement challenges African-American men to be concerned about society being fair for and to women, ensuring that women are treated with dignity and respect.* [Senator Grassley Question for the Record, Victor Allen Bolden, Nominee, U.S. District Judge for the District of Connecticut; Ana Radelat, *Bolden nomination to U.S. court advances despite GOP opposition*, the CT mirror, 9/18/2014.]", Plaintiff's Motion to Disqualify, US District Court of Connecticut, 3:21-CV-00618-VAB, 8/18/2022.

parental rights, etc.).[49] This issue was not moot because it ended up being raised

before this Court, a logical step within the judicial process, and this Court

graciously granted this party with the opportunity to make his case via electronic

filing after two years.  Otherwise, Mr. IRAZU would not have the opportunity to

do so.  How can this be assimilated?  This party is declared indigent due to the

issues outlined in his complaint, someone with litigating and electronic filing

experience, who is in fact sent abroad because of those same issues composing the

*litis* subject to analysis, but he is denied of the opportunity to produce electronic

---

[49]  Mootness arises when there is no longer an actual controversy between the
parties to a court case, which is clearly not the case in any of Judge BOLDEN's
rulings, including the request for electronic filing, as well as the ongoing legal
conflict created before the Connecticut legal system despite this party's efforts for
such not to be the case. "[A]n actual controversy must exist not only at the time the
complaint is filed, but through all stages of the litigation.", *in re, Kingdomware
Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) (quoting *Already, LLC v.
Nike, Inc.*, 568 U.S. 85, 90–91 (2013)). *See also, e.g.*, *Decker v. Nw. Envtl. Def.
Ctr.*, 568 U.S. 597, 609 (2013) (It is a basic principle of Article III that a justiciable
case or controversy must remain extant at all stages of review, not merely at the
time the complaint is filed.) (quoting *United States v. Juvenile Male*, 564 U.S. 932,
936 (2010) (per curiam)); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78
(1990) (To sustain our jurisdiction . . . it is not enough that a dispute was very
much alive when suit was filed, or when review was obtained in the Court of
Appeals.); *Honig v. Doe*, 484 U.S. 305, 317 (1988) (That the dispute between
parties was very much alive when suit was filed . . . cannot substitute for the actual
case or controversy that an exercise of this Court's jurisdiction requires.); *Burke v.
Barnes*, 479 U.S. 361, 363 (1987) (Article III of the Constitution requires that there
be a live case or controversy at the time that a federal court decides the case; it is
not enough that there may have been a live case or controversy when the case was
decided by the court whose judgment we are reviewing.)

filing to actually plead in court and move forward with his complaint. Mr. IRAZU did plead for it, even via a personal letter addressed to both Judge BOLDEN and US Magistrate SPECTOR before leaving his adopted country.[50]

Judge BOLDEN also denied a motion to seal containing sensitive information about children at the time, as well as financial and health records, and matters of intimate nature. Judge BOLDEN also claimed it was a moot issue almost two years ago. As far as timing is concerned, how could be reasonably explained that a judge declares someone indigent, such same person reluctantly leaves his adopted country after almost 30 years –also with relevant health issues–, and takes months and years to deny his complaint, after compelling him to sue an officer from the State of Connecticut when there was no need for it to clear the way for federal jurisdiction? Mr. IRAZU cannot make any sense out it, if it were not for the fact that Judge BOLDEN purposely stalled the process via the go-in-between with US Magistrate SPECTOR.

Moreover, when it gets to technical issues, Judge BOLDEN and US Magistrate SPECTOR refused to provide any clarifications to this party as to the aforesaid. In fact, US Magistrate SPECTOR seemed to have taken issue with Mr. IRAZU's need for understanding why this process was taking such a course, as

---

[50] Appendix D.

well as the mere mention of Judge Donna HELLER.[51]  Mr. IRAZU was notified of

US Magistrate SPECTOR's ruling on international woman's day, and he certainly

knew Mr. IRAZU had been the victim of false charges during acrimonious divorce

proceedings, in which he was cleared of any wrongdoing.[52]

     Finally, Judge BOLDEN, by adopting and mandating the recommendations

of US Magistrate SPECTOR, restricted the complaint to a § 1983 claim and

compelled Mr. IRAZU to sue Mr. DIAMOND, at the very least, on top of Ms.

OLIVA and Mr. COLLINS; granted time to amend the complaint under penalty of

dismissal "without prejudice" –already communicating the complaint was not

frivolous or malicious–; but only to radically change routes and dismiss the

complaint "with prejudice" two years later by arguing that a law clerk does not

have absolute immunity but in fact ruling that he does.  How can this be

assimilated?

    Mr. IRAZU respectfully believes Judge BOLDEN and US Magistrate

SPECTOR should not intervene in these proceedings any further, if Mr. IRAZU

---

[51] "The plaintiff alleges that "[a]s objectively described per [Paragraphs] 25, 58-64, 78-81, and 107 above, the hearings of 7/11-13/2017 before *Judge Donna Heller* literally operated as a joint legal team between the State and Mr. Collins, while unsuccessfully trying to cover the formalities of an impartial process already destined to be *'resolved'* for Ms. Oliva."", US Magistrate Robert Spector, Ruling Recommending Dismissal, 3/8/2022, p. 12 (# 19); see official transcripts per idem 40.

[52] Idem 5, 6, 7, 9.

were to have the chance to advance with his complaint as requested herein. Please do note Mr. IRAZU asked for an independent panel of judges to ponder and rule on his request for disqualification of both Judge BOLDEN and US Magistrate SPECTOR, but the first one preferred to embark on it and deny it by himself. Here we are not talking of justices of the Supreme Court who, by virtue of their supreme position within the judiciary, do have the ethical bandwidth to rule on their own recusals.

An impartial judge is an integral and necessary component of any legitimate and fair judicial process under the due process guarantee based on precedents from the Supreme Court of several decades ago; namely:

> "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of justice has always endeavored to prevent even the probability of unfairness… Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice.", *in re, Murchison*, 349 U.S. 133, 136 (1950).

## CONCLUSION

For all reasons stated above, Mr. IRAZU respectfully requests that this Court reverse the US District Court's dismissal of his complaint and order as follows:

(i)     remand the case to the US District Court deemed convenient to accept this party's complaint, allow him to amend it, and order proceedings to follow their due course;

(ii)    transfer all legal proceedings pertaining to Mr. Fernando G. IRAZU and Ms. Margarita OLIVA SAINZ de AJA at the Superior District Court of Bridgeport, Connecticut, and the Appellate Court of Connecticut, as well as all funds held in escrow by the first one, to the US District Court designated per (i) above; and

(iii)   disqualify Judge Victor A. BOLDEN and US Magistrate Robert SPECTOR from further intervening in these proceedings.

Dated: July 17, 2023.                    _____

Fernando G. IRAZU
Plaintiff-Appellant, *Pro Se*
Attorney at Law
Billinghurst 1656, 2 A
Buenos Aires, 1425
Argentina
+54114824-1067
fgirazu@gmail.com

**CERTIFICATION**

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) (Local Rule 32.1.(a)(4)(A)) because it contains 13,019 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word.

I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

Dated: July 17, 2023.                    _____

Fernando G. IRAZU
Plaintiff-Appellant, *Pro Se*
Attorney at Law

## CERTIFICATE OF SERVICE

On July 17, 2023, I filed and served the foregoing Brief for the Plaintiff-Appellant, *Pro Se*, Mr. Fernando G. IRAZU, Attorney at Law, via the Court's electronic-filing system.

Dated: July 17, 2023.                    _____

Fernando G. IRAZU
Plaintiff-Appellant, *Pro Se*
Attorney at Law

\* \* \*