Fernando Irazu
Billinghurst 1656, 2A
Buenos Aires, 1425
Argentina
fgirazu@gmail.com
+54 11 4824-1067

July 29, 2023

*Via CM/ECF*

Hon. Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Dear Ms. O'Hagan Wolfe:

**Re:  *Irazu v. Sainz de Aja, et. al*, 23-702: Notice of Supplemental Authority Under Rule 28(j)**

Fernando G. Irazu (the "Plaintiff" or "Plaintiff-Appellant"), *pro se*, respectfully addresses the Clerk of the Court pursuant to Fed. R. App. P. 28 (j), in order to cite a supplemental authority from this Court that came to his attention and was released after the original filing of his brief; namely, *in re, Hunter v. McMahon*, No. 21-1473 (2d Cir. 7/21/2023).

> "We hold that the *Rooker-Feldman* doctrine does not apply when an appeal remains pending in state court. *Rooker-Feldman* applies only after the state proceedings have ended. We reverse the judgment of the district court insofar as it dismissed Hunter's complaint for lack of subject matter jurisdiction. We vacate the judgment insofar as the district court denied Hunter's motions for leave to amend and for additional time to serve defendants. We remand for further proceedings consistent with this opinion."

1

Although the nature of the Plaintiff's action does not directly imply "relitigating", in such a recent precedent this Court vacated the judgment of the lower court insofar it denied the plaintiff's motion for leave to amend and for additional time to serve defendants, all under the premise the *Rooker-Feldman* doctrine does not apply when an appeal remains pending in state court.

This new precedent from this Court is indeed relevant since such a doctrine was in part argued by the District Court to dismiss this party's complaint. Please see Plaintiff-Appellant's Special Appendix, page SA – 25 [detailed footnote (3) of US Magistrate Robert Spector's Ruling of 3/8/2022 (# 19), which was adopted by Judge Victor Bolden on 12/22/2022 (# 27)].

In the present case, there are pending proceedings in Connecticut courts at various stages and instances. On pages 10, 21, 26, 28, 36, 39 and 40 of the Plaintiff-Appellant's brief, among other side notations, this party touches on the sensitive issue of simultaneous legal proceedings before local courts in Connecticut.

The body of this letter does not exceed 350 words.

Respectfully submitted,

_____
Fernando G. IRAZU
Plaintiff-Appellant
Attorney at Law

c.c.: Counsel of Record (via CM/ECF)

21-1473
*Hunter v. McMahon*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————

AUGUST TERM 2022
No. 21-1473

**DOMINIQUE HUNTER,**
*Plaintiff-Appellant,*

v.

**CHERYL MCMAHON, CPS EMPLOYEE; CAROL HENDERSON, CPS EMPLOYEE; THOMAS DIMILLO, NIAGARA COUNTY FAMILY COURT JUDGE; NIAGARA COUNTY CLERK EMPLOYEES (NAMES UNKNOWN); VANESSA GUITE, RETAINED COUNSEL; LAWRENCE LINDSAY, COURT ASSIGNED COUNSEL; KATHLEEN WOJTASZEK-GARIANO, NIAGARA COUNTY FAMILY COURT JUDGE; MUNICIPAL NIAGARA COUNTY; CHILD PROTECTIVE SERVICES OF NIAGARA COUNTY,**
*Defendants-Appellees.*[*]

———————

On Appeal from the United States District Court
for the Western District of New York

———————

SUBMITTED: NOVEMBER 23, 2022
DECIDED: JULY 21, 2023

———————

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before:        KEARSE, PARK, and MENASHI, *Circuit Judges*.

Niagara County's Child Protective Services successfully petitioned in Niagara County Family Court to strip Dominique Hunter of her parental rights over her minor son. Hunter appealed the Family Court's decision. While that appeal was pending, she brought suit in federal court against officials and entities involved in terminating her parental rights. The district court dismissed Hunter's suit pursuant to the *Rooker-Feldman* doctrine. We hold that the *Rooker-Feldman* doctrine does not apply when an appeal remains pending in state court. *Rooker-Feldman* applies only after the state proceedings have ended. We reverse the judgment of the district court insofar as it dismissed Hunter's complaint for lack of subject matter jurisdiction. We vacate the judgment insofar as the district court denied Hunter's motions for leave to amend and for additional time to serve defendants. We remand for further proceedings consistent with this opinion.

——————

Dominique Hunter, *pro se*, Niagara Falls, NY, *for Plaintiff-Appellant*.

Brian P. Crosby, Gibson, McAskill & Crosby, LLP, Buffalo, NY, *for Defendants-Appellees Cheryl McMahon; CPS Employees; Niagara County Clerk Employees (Names Unknown); Lawrence Lindsay, Court Assigned Counsel; Municipal Niagara County; and Child Protective Services of Niagara County*.

Barbara D. Underwood, Solicitor General, Victor Paladino, Senior Assistant Solicitor General, Sarah L. Rosenbluth, Assistant Solicitor General, *for* Letitia James, Attorney General of the State of New York, Albany, NY,

for Defendants-Appellees Judges Thomas DiMillo and
Kathleen Wojtaszek-Gariano.

———————

MENASHI, *Circuit Judge*:

The Child Protective Services division of the Niagara County
Department of Social Services ("CPS") determined that Dominique
Hunter was unfit to retain parental rights over her minor son C.W.
CPS successfully petitioned in state family court to terminate
Hunter's parental rights. Hunter appealed. While Hunter's appeal
was pending, she brought suit in federal court against CPS employees
and other public officials and entities. The district court dismissed
Hunter's suit. The district court concluded that it lacked subject
matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, which
bars "cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the district court
proceedings commenced and inviting district court review and
rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.
Corp.*, 544 U.S. 280, 284 (2005). We disagree.

*Rooker-Feldman* applies when "the losing party in state court
filed suit in federal court *after the state proceedings ended*." *Id.* at 291
(emphasis added). When an appeal remains pending in state court,
the state proceedings have not ended and *Rooker-Feldman* does not
apply. Because Hunter filed her federal suit before the state
proceedings were over, *Rooker-Feldman* did not deprive the district
court of jurisdiction. Moreover, *Rooker-Feldman* would not bar all of
Hunter's claims in this case even if the state proceedings had reached
finality. We reverse the judgment of the district court insofar as it
dismissed Hunter's complaint for lack of subject matter jurisdiction,
and we vacate the judgment insofar as the district court denied

Hunter's motions for leave to amend and for additional time to serve defendants. We remand for further proceedings consistent with this opinion.

## BACKGROUND

On May 10, 2017, Dominique Hunter's minor son C.W. had a half-day at school. Hunter claims she did not know that C.W. would be coming home early that day. So when the school bus arrived with C.W., Hunter was not there to greet him. C.W. has special needs and cannot be left alone. The Niagara County Department of Social Services therefore took emergency custody of C.W. without a court order.

CPS claims that while C.W. was in CPS custody, he informed CPS employees that his mother had been hitting him and that he was afraid of her.[1] CPS had previously suspected Hunter of abusing and neglecting C.W. Indeed, CPS discovered that C.W. was unattended on May 10 because CPS caseworker Cheryl McMahon went to Hunter's house for an unannounced visit to investigate a report that Hunter had used excessive corporal punishment against C.W.

The next day, CPS Supervisor Carol Henderson filed a petition of child neglect with the Family Court of New York, County of Niagara. After a hearing with Hunter present, Judge Thomas DiMillo ordered the temporary removal of C.W. from Hunter's custody. At a later hearing before Judge Kathleen Wojtaszek-Gariano, Hunter agreed to a finding of neglect of C.W. without admission.

---

[1] Hunter disputes this account. *See* Supp. App'x 11 (alleging that CPS relied on "false claims" that "CW stated he had been hit by plaintiff mother [Hunter] and was afraid").

4

Under the fact-finding order, Hunter needed to meet certain requirements—including taking anger-management classes and undergoing a mental-health evaluation—to regain custody of C.W. Hunter alleges that she met these requirements. But after a hearing in April 2019, Judge Wojtaszek-Gariano determined that Hunter had not completed the required programs and had not visited C.W. since May 2017. Hunter did not appear at the hearing; she claims that she did not know when it was taking place. Judge Wojtaszek-Gariano ordered that guardianship and custody of C.W. be transferred to the Niagara County Department of Social Services, which was authorized to consent to the adoption of C.W. without Hunter's consent. On May 21, 2019, Hunter filed a notice of appeal from this family-court judgment.

While Hunter's appeal was pending in state court, she brought suit in federal court. She sued McMahon, Henderson, Judge DiMillo, Judge Wojtaszek-Gariano, and other officials and entities. In her amended complaint, Hunter alleges that these defendants committed torts against her and violated her constitutional rights. *See* Supp. App'x 14-15. She requests monetary damages and a permanent injunction ordering the return of her son to her custody. Hunter filed her complaint *pro se*.

The district court dismissed the complaint without prejudice because it concluded that it lacked subject matter jurisdiction. In the district court's view, *Rooker-Feldman* barred the action because "Hunter 'lost' in Family Court ... before Hunter filed the instant lawsuit" and "[t]he remedies Hunter seeks—C.W.'s return, expungement of records, and money damages—would require this Court to review and reject the merits underlying the Family Court judgments." *Hunter v. McMahon*, No. 20-CV-0018, 2021 WL 1996772,

at *2 (W.D.N.Y. May 19, 2021). The district court concluded that Hunter's "claims either already have been decided by the Family Court or are 'inextricably intertwined' with the claims already decided by the Family Court." *Id.* at *3 (alteration omitted) (quoting the report and recommendation of the magistrate judge).

The district court denied Hunter leave to amend her complaint on the ground that amendment would be futile because "[e]verything that Hunter asks of this Court ... would require it to review and reject the Family Court judgments, something it does not have the power to do." *Id.* Additionally, the district court denied as futile Hunter's motion for a second extension of time to serve certain defendants.

Hunter timely appealed.

## STANDARD OF REVIEW

"Because *Rooker-Feldman* goes to subject-matter jurisdiction, we review de novo the district court's application of the doctrine." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). In fact, "we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). Moreover, "[w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). In conducting our review, "[w]e construe complaints filed by *pro se* litigants liberally and 'interpret them to raise the strongest arguments that they suggest.'" *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

6

## DISCUSSION

Hunter argues that *Rooker-Feldman* does not bar her federal lawsuit. We agree. *Rooker-Feldman* applies only after state-court proceedings have "ended." *Exxon Mobil*, 544 U.S. at 291. Those proceedings had not ended by the time Hunter filed her federal lawsuit because an appeal remained pending in state court. Because federal courts "assess[] jurisdiction … as of the moment the complaint was filed," *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001), *Rooker-Feldman* presents no jurisdictional bar to proceeding with Hunter's federal suit. In addition, at least some of Hunter's claims would not be barred by *Rooker-Feldman* even if the state-court proceedings had ended before the filing of the federal suit.

We reverse the judgment of the district court insofar as it dismissed Hunter's complaint for lack of subject matter jurisdiction. We vacate the judgment insofar as the district court denied Hunter's motions for leave to amend and for additional time to serve defendants. We remand for further proceedings consistent with this opinion.

## I

Until Congress provides otherwise, the only federal court to which a litigant may appeal from a state-court judgment is the Supreme Court of the United States. *See* 28 U.S.C. § 1257(a) (providing that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari" when federal law is implicated). The *Rooker-Feldman* doctrine, named after a pair of Supreme Court

decisions that applied this rule,[2] "is based on the congressional grant, in 28 U.S.C. § 1257, of appellate jurisdiction over state court judgments to the United States Supreme Court and the grant of original jurisdiction over certain suits to United States district courts. Read together, these statutes indicate that the Supreme Court's appellate jurisdiction over state court judgments is exclusive and the jurisdiction of the federal district courts is purely original."[3]

The Supreme Court has explained that *Rooker-Feldman* bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). But the Court has emphasized "the narrow ground occupied by *Rooker-Feldman*," noting that the doctrine applies in "limited circumstances." *Exxon Mobil*, 544 U.S. at 284, 291. The Court has held that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.*

---

[2] *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[3] Allison B. Jones, Note, *The Rooker-Feldman Doctrine: What Does It Mean to Be Inextricably Intertwined?*, 56 Duke L.J. 643, 644-45 (2006) (footnotes omitted).

The Court meant what it said. It subsequently reiterated that "*Rooker-Feldman* is not simply preclusion by another name" but "applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (internal quotation marks and citation omitted). And the Court has "warned that the lower courts have at times extended *Rooker-Feldman* 'far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.'" *Id.* at 464 (quoting *Exxon Mobil*, 544 U.S. at 283). [4] The Court has been so emphatic on this point that Justice Stevens believed it had "finally interred the so-called '*Rooker-Feldman* doctrine'" and had rejected the "resuscitation of a doctrine that has produced nothing but mischief for 23 years." *Lance*, 546 U.S. at 468 (Stevens, J., dissenting). [5]

---

[4] *See also Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("[D]istrict courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply."); Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction After Saudi Basic and Anna Nicole*, 42 Tulsa L. Rev. 553, 566 (2007) ("*Rooker-Feldman* ... is an incredibly narrow exception to federal jurisdiction, applying only to lawsuits that are inescapably tantamount to appeals by state-court losers.").

[5] Commentators agreed with that assessment. *See, e.g.*, Samuel Bray, *Rooker Feldman (1923-2006)*, 9 Green Bag 2d 317, 317 (2006) ("Rooker Feldman, the legal personality, died yesterday at his home in Washington, D.C. He was 83.") (footnote omitted) (citing *Lance*, 546 U.S. at 466); Suzanna Sherry, *Logic Without Experience: The Problem of Federal Appellate Courts*, 82 Notre Dame L. Rev. 97, 121 (2006) ("One commentator has wittily—but probably accurately—provided an obituary for *Rooker-Feldman*.") (citing Bray, *supra*).

Despite the Supreme Court's "efforts to return *Rooker-Feldman* to its modest roots," however, "lawyers continue to invoke the rule and judges continue to dismiss federal actions under it" beyond the modest circumstances in which it applies. *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020) (Sutton, J., concurring).[6] In our circuit, we have articulated a four-part test according to which *Rooker-Feldman* applies if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (internal quotation marks and alterations omitted). We employ that test while keeping in mind the Supreme Court's warning that courts must avoid extending *Rooker-Feldman* beyond the narrow circumstances in which it properly applies.

Here, we conclude that *Rooker-Feldman* does not bar Hunter's lawsuit for two reasons. First, the state-court judgment was not "rendered" for *Rooker-Feldman* purposes "before the district court proceedings commenced" because an appeal remained pending in the state case when Hunter filed her federal suit. Second, at least some of Hunter's claims would not implicate *Rooker-Feldman* even if the state proceedings had ended before Hunter filed her federal suit.

---

[6] *See also Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 410 (7th Cir. 2023) (Kirsch, J., dissenting from denial of rehearing en banc) ("Despite *Exxon*'s command to rein in *Rooker-Feldman*, our circuit's application of the doctrine has only grown.").

## A

We have not previously decided whether *Rooker-Feldman* applies to a federal lawsuit when a state-court appeal remains pending.[7] Since the Supreme Court's decision in *Exxon Mobil*, however, "every federal circuit court that has addressed the issue has held that *Rooker-Feldman* does not apply if a state-court appeal is pending when the federal suit is filed." *Hansen v. Miller*, 52 F.4th 96, 103 (2d Cir. 2022) (Menashi, J., concurring).[8] Our court has also

---

[7] *See Butcher v. Wendt*, 975 F.3d 236, 244 n.5 (2d Cir. 2020) ("We have never addressed whether the *Rooker-Feldman* doctrine applies where, as here, there is a pending state appeal.").

[8] *See Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) ("*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed."); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 460 (3d Cir. 2019) ("*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court."); *Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) ("*Rooker-Feldman* does not bar the claims of federal-court plaintiffs who … file a federal suit when a state-court appeal is pending."), *overruled on other grounds*, *Hadzi-Tanovic*, 62 F.4th at 402; *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009) ("[S]tate proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action."); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) ("Guttman filed his federal suit while his petition for certiorari to the New Mexico Supreme Court was pending. His state suit was not final. As such, the *Rooker-Feldman* doctrine does not bar his federal suit and the district court does have subject matter jurisdiction to hear the case."); *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005) ("[T]he *Rooker/Feldman* doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended. There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action.") (citations omitted); *Mothershed v. Justs. of the Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005) ("In *Exxon Mobil*, the Supreme Court clarified that the *Rooker-Feldman* doctrine is only

suggested that is the correct approach.[9] In resolving this question, therefore, we "adopt the unanimous position of every other circuit

---

operative where a federal suit is initiated after state court proceedings have ended. Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum.") (citation omitted); *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24-25 (1st Cir. 2005) (holding that "the state proceedings have 'ended'" for *Rooker-Feldman* purposes if "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved," "if the state action has reached a point where neither party seeks further action," or "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions … remain to be litigated").

[9] *See Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (noting that "the *Rooker-Feldman* doctrine would likely apply" if a plaintiff brought suit in federal court "at the completion of her appeals" in state court); *see also Thomas v. Martin-Gibbons*, 857 F. App'x 36, 38 & n.2 (2d Cir. 2021) (applying *Rooker-Feldman* because "the plaintiffs filed the present action" after the time to appeal the state-court decision had expired, "[t]he record does not indicate that the plaintiffs timely appealed the family court decision, and therefore it appears that the state-court proceedings had ended"); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (holding that the "requirements of the *Rooker-Feldman* doctrine were satisfied" because the plaintiffs "filed this federal lawsuit … after [their] time to appeal the [state-court] judgment had passed"); *Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 22 (2d Cir. 2020) (holding that the *Rooker-Feldman* doctrine applied because the federal suit was filed after the "thirty-day deadline for appeal" of the state-court judgment). We have also relied on cases from other circuits that endorse this approach to deciding "whether 'the state proceedings have "ended" within the meaning of *Rooker-Feldman*.'" *Hoblock*, 422 F.3d at 89 (quoting *Federación*, 410 F.3d at 25); *see also Malhan*, 938 F.3d at 459 (including the Second Circuit among those that have "cited *Federacion* with approval"); *Guttman*, 446 F.3d at 1032 (including the Second Circuit among those courts that have held "*Rooker-Feldman* applies only to suits filed after state proceedings are final").

12

court to address it." *Butcher*, 975 F.3d at 246 (Menashi, J., concurring in part and concurring in the judgment).

The Supreme Court has emphasized that *Rooker-Feldman* deprives a federal court of jurisdiction only if the federal suit is filed "after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 291. If a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply. Under such circumstances, the plaintiff's federal suit does not function as an appeal from the state-court judgment, and consideration of the federal suit does not interfere with Supreme Court review of "[f]inal judgments or decrees rendered by the highest court of a State." 28 U.S.C. § 1257(a); *see Dornheim*, 430 F.3d at 923 ("There is no judgment to review if suit is filed in federal district court prior to completion of the state-court action.").

We agree with those circuits that have held that "*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court." *Malhan*, 938 F.3d at 460. The state-court proceedings must either have reached finality or yielded an order that satisfies "the exceptions to the finality requirement that were set out in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975)," so as to trigger the exclusive appellate jurisdiction of the Supreme Court. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 612 (1989).[10] Simply stated, "[p]roceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the

---

[10] *See Mothershed*, 410 F.3d at 604 n.1 ("A state supreme court's interlocutory ruling will therefore trigger the *Rooker-Feldman* doctrine's applicability where such ruling constitutes the final determination of an issue.").

issue that the federal court plaintiff seeks to relitigate in a federal forum." *Mothershed*, 410 F.3d at 604 n.1.

If the rule were otherwise, it would not be possible to tell whether the plaintiff in federal court was the loser in state court. In this case, for example, two months after the district court dismissed Hunter's complaint, a New York appellate court reversed the state-court order terminating Hunter's parental rights. *See Matter of Calvin L.W. (Dominique H.)*, 196 A.D.3d 1181 (N.Y. App. Div. 4th Dep't 2021). While the state proceedings were ongoing, the district court could not conclusively determine that Hunter was "the losing party in state court." *Exxon Mobil*, 544 U.S. at 291.

The defendants concede that Hunter's state-court appeal was pending when she filed her federal lawsuit. Because federal courts "assess[] jurisdiction … as of the moment the complaint was filed," *E.R. Squibb & Sons*, 241 F.3d at 163, that is the end of the *Rooker-Feldman* inquiry. The state proceedings remained ongoing when Hunter filed her federal complaint, so *Rooker-Feldman* does not apply.[11]

---

[11] We note that the district court would not lose jurisdiction if the state proceedings were resolved while the federal suit remained pending. *See Exxon Mobil*, 544 U.S. at 292 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."); *id*. at 294 ("*Rooker-Feldman* did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and *it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts*.") (emphasis added); *cf. id*. at 294 n.9 ("The Court of Appeals criticized ExxonMobil for pursuing its federal suit as an 'insurance policy' against an adverse result in state court. There is nothing necessarily inappropriate, however, about filing a protective action.") (citation omitted).

**B**

Even if the state proceedings in this case had reached finality, the district court still would have erred because it "misperceived the narrow ground occupied by *Rooker-Feldman.*" *Exxon Mobil*, 544 U.S. at 284. The district court determined that it could not consider any of Hunter's claims "because those claims either already have been decided by the Family Court or are 'inextricably intertwined' with the claims already decided by the Family Court." *Hunter*, 2021 WL 1996772, at *3 (alteration omitted). Yet *Rooker-Feldman* applies only when "the plaintiff complains of injuries caused by a state court judgment," *Vossbrinck*, 773 F.3d at 426 (internal quotation marks and alteration omitted), and not all of Hunter's alleged injuries were so caused.

We have said that this part of the *Rooker-Feldman* inquiry "is the 'core requirement from which the other *Rooker-Feldman* requirements derive.'" *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (alterations omitted) (quoting *Hoblock*, 422 F.3d at 87). In applying this requirement, "[t]he following formula guides our inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88 (emphasis added).

Accordingly, "[o]ur court has further determined that *Rooker-Feldman* does *not* bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (internal quotation marks omitted and emphasis

added).[12]  As the Supreme Court has explained, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 (internal quotation marks and alterations omitted).

The notions of "inextricably intertwined" or "independent" claims "are simply descriptive labels attached to claims that either do or do not meet the requirements outlined in *Exxon Mobil*, and therefore they do not have substantive content independent of the four *Exxon Mobil* requirements." *McKithen v. Brown*, 481 F.3d 89, 97 n.7 (2d Cir. 2007) (internal quotation marks, alterations, and citation omitted). Thus, "if the requirements outlined in *Exxon Mobil* are met, then the claim asserted in federal court is 'inextricably intertwined' with the claim raised in state court." *Id.* There is no separate inquiry into whether a claim is "inextricably intertwined."[13]  As the Seventh Circuit has explained:

> If a contention in federal litigation is intertwined with the
> state litigation only in the sense that it entails a factual or

---

[12] *Cf. Hansen*, 52 F.4th at 100 ("[T]he doctrine generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding, because the adjudication of such claims would 'not require the federal court to sit in review of the state court judgment.'") (quoting *Vossbrinck*, 773 F.3d at 427).

[13] *See Behr*, 8 F.4th at 1212 ("[C]onsidering whether a claim is 'inextricably intertwined' with a state court judgment is not a second prong of the analysis."); Sherry, *supra* note 5, at 121 (noting that in *Exxon Mobil*, "[t]he Court also appeared to abandon the 'inextricably intertwined' part of the doctrine").

> legal contention that was, or could have been, presented
> to the state judge, then the connection between the state
> and federal cases concerns the rules of preclusion, which
> are not jurisdictional and are outside the scope of the
> *Rooker-Feldman* doctrine. Because the phrase
> "inextricably intertwined" has the potential to blur this
> boundary, it should not be used as a ground of decision.

*Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018) (Easterbrook, J.). For *Rooker-Feldman* purposes, we are looking for a "*causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen*, 481 F.3d at 98.

At least some of Hunter's claims do not satisfy this causal-relationship requirement. For example, Hunter alleges that some of the defendants conspired—before any decisions were issued by the family court—to discriminate against her on the basis of race, to conduct unlawful searches and seizures, and to defame her, among other claims. *See* Supp. App'x 14-15. Hunter alleges that McMahon and Henderson took custody of C.W. on May 10 "under falsified claims that an emergency existed" and conducted "an illegal interrogation of [C.W.] in [Hunter's] absence and without [her] consent." *Id.* at 11. Hunter claims that this conduct violated her constitutional rights, and she seeks damages for that violation.[14] The state-court judgment did not *produce* this alleged earlier-in-time conduct, though it may have adjudicated the legitimacy of the

---

[14] *See, e.g.*, Supp. App'x 13 (alleging that "a parent has a constitutionally protected 'liberty' interest in the custody of his/her children" and that "the investigative interview of a child constitutes a 'search and seizure' and when conducted on private property" without a warrant or admitting of some other exception "is an unreasonable search and seizure in violation of the constitutional rights of the parent").

17

conduct after the fact. The district court therefore did not lack subject matter jurisdiction to evaluate Hunter's claim. Instead, "the connection between the state and federal cases concerns the rules of preclusion, which are not jurisdictional and are outside the scope of the *Rooker-Feldman* doctrine." *Milchtein*, 880 F.3d at 898. Even if the state proceedings had ended by the time Hunter filed her federal suit, the district court should not have allowed an expansive view of *Rooker-Feldman* to "supersed[e] the ordinary application of preclusion law." *Exxon Mobil*, 544 U.S. at 283.

## II

The district court did not grant Hunter leave to amend her complaint and it denied her motion for a second extension of time to serve additional defendants. These decisions were, at least in part, based on the district court's erroneous conclusion that *Rooker-Feldman* deprived it of subject matter jurisdiction over the case. *See Hunter*, 2021 WL 1996772, at *3 ("Because this Court lacks subject matter jurisdiction over Hunter's claims, it also agrees … that leave to amend should be denied."); *id.* at *4 ("Because this Court does not have subject matter jurisdiction over Hunter's claims, the Court dismisses, *sua sponte*, the amended complaint against [the additional defendants]."). Accordingly, we vacate those decisions of the district court and remand for further proceedings consistent with this opinion.[15]

---

[15] The defendants ask us to affirm the judgment of the district court on alternative grounds on which the district court did not rely. *See Hunter*, 2021 WL 1996772, at *3 n.5 ("[B]ecause this Court lacks jurisdiction, it will not reach those issues."). "[M]indful that we are a court of review, not of first view," we decline to consider those arguments for the first time on appeal.

18

**CONCLUSION**

We reverse the judgment of the district court insofar as it dismissed Hunter's complaint for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. We vacate the judgment insofar as the district court denied Hunter's motions for leave to amend and for additional time to serve defendants. We remand for further proceedings consistent with this opinion.

---

*Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). The defendants may direct those arguments to the district court in the first instance.