# UNITED STATES COURT OF APPEALS
## FOR THE 2nd CIRCUIT

-----------------------------------------------------x

Fernando G. IRAZU, *Pro Se*
*Plaintiff-Appellant*                                    23:702

v.

Margarita OLIVA SAINZ DE AJA and
Kevin F. COLLINS, *et. al.*
*Defendants-Appellees*

-----------------------------------------------------x

## APPENDIX TO MOTION FOR ORDER

**DISCLAIMER**: please note Mr. Fernando G. IRAZU, the Plaintiff-Appellant herein, in the attached documentation is referred to as Defendant or Defendant-Appellant, and Ms. Margarita OLIVA SAINZ de AJA and her counsel Attorney Kevin F. COLLINS, the Defendants-Appellees herein, in the attached documentation are referred to as Plaintiff.

**APPENDIX 1 A………………………………………………………………………..A-3**

- Email alert from CT Appellate Court indicating movement in the case dated 7/28/2023 (prior alert from 5/2023); email from Mr. Fernando IRAZU requesting access to e-services and appellate inbox (no access since 5/2023) of 7/28/2023; email granting access to e-services on 7/28/2023; email correspondence from Mr. Fernando G. IRAZU to Mr. Carl CICHETTI, Chief Law Clerk, and Mr. Luke MATYI, Case Manager, of 7/31/2023

- Case detail of AC45708 before the CT Appellate Court, highlighting in red "returned" cross-appeal of 8/16/2022, and *sua sponte* order entered by Mr. Luke MATYI on 7/5/2023.

- Order from the CT Appellate Court, *sua sponte*, entered by Mr. Luke MATYI (Case Manager) on 7/5/2023.

**APPENDIX 1 B**.................................................................................................**A-12**

- Mr. Fernando G. IRAZU's *Motion to Dismiss Cross-Appeal* of 7/31/2023.

**APPENDIX 1 C**.................................................................................................**A-22**

- Mr. Fernando G. IRAZU's *Restated Motion for Contempt Post-Judgment* of 8/7/2023.

**APPENDIX 1 A.**

- Email alert from CT Appellate Court indicating movement in the case dated 7/28/2023 (prior alert from 5/2023); email from Mr. Fernando IRAZU requesting access to e-services and appellate inbox (no access since 5/2023) of 7/28/2023; email granting access to e-services on 7/28/2023; email correspondence from Mr. Fernando G. IRAZU to Mr. Carl CICHETTI, Chief Law Clerk, and Mr. Luke MATYI, Case Manager, of 7/31/2023.

- Case detail of AC45708 before the CT Appellate Court, highlighting in red "returned" cross-appeal of 8/16/2022, and *sua sponte* order entered by Mr. Luke MATYI on 7/5/2023.

- Order from the CT Appellate Court, *sua sponte*, entered by Mr. Luke MATYI (Case Manager) on 7/5/2023.

 **Gmail**                                             **Fernando Irazu <fgirazu@gmail.com>**

Case 23-702, Document 64, 08/08/2023, 3553665, Page4 of 34

## Supreme/Appellate Case Update AC45708
1 message

**Judicial Branch - State of Connecticut** <NoReply.JudMessaging@judicialmail.ct.gov>        Fri, Jul 28, 2023 at 4:00 AM
To: fgirazu@gmail.com

Jul 28, 2023

CT Judicial Branch Supreme/Appellate Case Update

Docket Number:  AC45708
Case Name: MARGARITA O. SAINZ DE AJA v. FERNANDO G. IRAZU

Note:

      Some activity has occurred in this case.

For more information on this case, select the link below:
https://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=77495

E-Mail Subscription Updates DO NOT constitute or replace official notice. ALL OFFICIAL NOTICES IN SUPREME AND APPELLATE COURT MATTERS ARE
DELIVERED ELECTRONICALLY TO THE E-SERVICES INBOX to attorneys, law firms and self-represented parties who have an E-Services account and have filed
an appellate access form (JD-AC-015) when required by Practice Book Section 60-7 (c).

This E-Mail Subscription Update is provided by the Judicial Branch as a service. E-Mail updates are sent once a day for all activity in a case and provide only an
alert that activity has occurred on the subscribed case. For more specific information on the activity, please click on the above link in this email. The Judicial Branch
is not responsible for e-mails that are not delivered or are not delivered in a timely manner due to ISP issues, etc.

DO NOT REPLY to this e-mail. This mailbox is not monitored.

For general information, visit the Judicial Branch website at http://www.jud.ct.gov.

Court Operations
State of Connecticut Judicial Branch
Eservices@jud.ct.gov

To UnSubscribe, select the link below:
https://www.jud.ct.gov/JudMessaging/Request.aspx?ReqID=e70060520077495198925
(If it does not appear as a clickable link you can copy and paste it into a web browser manually.)

 **Gmail**

**Fernando Irazu <fgirazu@gmail.com>**

---

# Supreme/Appellate Case Update AC45708

**Fernando Irazu** <fgirazu@gmail.com>                                      Fri, Jul 28, 2023 at 8:11 AM
To: "Cicchetti, Carl" <carl.cicchetti@connapp.jud.ct.gov>, "Matyi, Luke" <Luke.Matyi@connapp.jud.ct.gov>, "Inquiry, Appellate" <appellate.inquiry@connapp.jud.ct.gov>, EServices Shared Mailbox <EServices@jud.ct.gov>, EServices Shared Mailbox <EServices@judicialmail.ct.gov>

Dear Sirs,

I am writing to you because I see there's been some activity in the case of which I am not aware of and have no access to. Yesterday E-services communicated to me that my IP address (out of Buenos Aires, Argentina) must be somehow activated through you (see response attached). I would very much appreciate you allowing for that to happen in order for me to have access to my appellate inbox and eservices as a whole. My IP address is the following:

190.195.94.50

Thank you in advance for your cooperation.

Sincerely,


Fernando IRAZU
[Quoted text hidden]

---

 **GMAIL- Foreign location -- access to eservices.pdf**
108K

Case 23-702, Document 64, 08/08/2023, 3553665, Page5 of 34

                                    **Fernando Irazu <fgirazu@gmail.com>**

---

# Incident INC000000245610 receipt confirmation.
1 message

---

**HelpDesk Remedy** <helpdesk@jud.ct.gov>                    Fri, Jul 28, 2023 at 10:51 AM
Reply-To: HelpDesk Remedy <helpdesk@jud.ct.gov>
To: fgirazu@gmail.com

Dear Fernando . Irazu,

We are pleased to inform you that your reported Incident has been added to the Service Desk.  Your assigned Reference Number is INC000000245610.  This number should be retained for reference purposes.

Reference No.: INC000000245610
Summary: Out of Country access

Please do not hesitate to contact the Help Desk should there be any further questions or inquiries regarding your Incident.  Please quote your assigned Reference Number.

Yours sincerely,

Help Desk
860-282-6555

Case 23-702, Document 64, 08/08/2023, 3553665, Page6 of 34

 **Gmail**

**Fernando Irazu <fgirazu@gmail.com>**

## Oliva v. Irazu AC 45708 --phonecall, folllow up
1 message

**Fernando Irazu** <fgirazu@gmail.com>                                      Mon, Jul 31, 2023 at 9:24 AM
To: "Matyi, Luke" <Luke.Matyi@connapp.jud.ct.gov>, "Cicchetti, Carl" <carl.cicchetti@connapp.jud.ct.gov>

Dear Mr. Matyi,

I tried to reach you last Friday without luck. As usual, your voicemail said you were working from out of the office and instructed me to call a specific number, which ended up being Mr. Cichetti's.

The reason of my call was the following:

1. Last 8/16/2022 the other side cross-appealed a core ruling from Judge Moukawsher (contempt against the plaintiff, reargued, and affirmed in 12/2022) per AC 45708, but it was returned by you on that same date. And it was never cured, never refiled by the other side according to law.

2. Last 7/5/2023 --basically a year later--, without any party request, you entered an order asking the other side to produce all standard preliminary filings they had never produced according to law. To begin with, not even a proper filing for the cross-appeal itself, which in fact was never filed based on your return. There is no valid cross-appeal on file.

3. Thus, there was not even a need for a motion to dismiss because the cross-appeal was rejected by the Court, never admitted as a proper filing. Once more, and even more concerning, the subsequent mandatory filings were neither produced for almost a year --all against the law.

4. Moreover, your order of 7/5/2023 was not notified to me, no email came to my attention indicating that there was any case activity at all.

5. However, such email did come last 7/27/2023; the email system was suddenly reinstated on 7/27/2023. So I asked e-services to also reinstate my electronic access to be able check my appellate inbox and casedetail, and I was referred to the appellate court for it. You saw the email exchanges.

6. Then on 7/28/2023 I was able to see everything, including the latest filing from the other side also dated 7/27/2023.

As a result, please find attached a courtesy copy of a timely motion to dismiss dated 7/28/2023 pertaining to such spurious cross-appeal and invalid documentation.

As you would understand, considering the background of this case and the harsh circumstances in my life, almost 10,000 km away in South America, it naturally frustrates me to see (and endure) that these sorts of things can happen within a court of law. The one from which I've been (desperately) seeking justice for many years.

Sincerely,

Fernando IRAZU

Case 23-702, Document 64, 08/08/2023, 3553665, Page7 of 34



# State of Connecticut Judicial Branch
## Appellate/Supreme E-Filing

Please see below in particular items highlighted in red

**- Logged-In User :** Fernando G Irazu (FernandoIrazu)  **Email:** fgirazu10@gmail.com  Logout

E-Filing Home
-
E-Services Inbox (29)
-
Self Help
-
Logout
-
E-File a New Appellate Matter
-
E-File a Petition for Certification to Appeal
-
E-File a Motion or Application Before E-Filing an Appeal
-
List My Cases
-
My E-Filed Items
-
Case Search
  By Docket Number
  By Case Name
-
E-Services Home
-

E-File an Appearance    Go

## Appeal Case Information

**AC 45708    MARGARITA O. SAINZ DE AJA v. FERNANDO G. IRAZU**    Status: **New File**

| | | | |
|---|---|---|---|
| **Date Filed:** | 08/09/2022 | **Case Manager :** | LUKE P. MATYI |
| **Appeal By:** | Defendant | **Response to Docket Due Date:** | |
| **Argued Date:** | | **Disposition Method:** | |
| **Submitted on Briefs Date:** | | **Disposition Date:** | |
| | | **Cite:** | |
| **Panel:** | | **Petition(s) For Certification:** | |

### Cross Appeal/Amended Appeal

| | Date Filed | Status | Disposition Date | Disposition |
|---|---|---|---|---|
| AC 45708X01 | 08/16/2022 | New File | | |
| AC 45708A01 | 09/19/2022 | New File | | |

### Trial Court Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | FBTFA094057168S | **Court:** | JD COURTHOUSE AT BRIDGEPORT |
| **Judgment For:** | Plaintiff | **Judgment Date:** | 07/26/2022 |
| **Trial Judge(s):** | HON. THOMAS G. MOUKAWSHER | **Case Type:** | CIVIL - LEGAL SEPARATION |
| | | **Other Trial Judge(s):** | HON. Anthony D. Truglia Jr. |
| | | | HON. DONNA N. HELLER |
| | | | HON. ERIKA M. TINDILL |
| | | | HON. WILLIAM J. WENZEL |
| | | | Hon THOMAS D COLIN |
| | | | HON. DENNIS F. HARRIGAN |
| | | | HON. MARYLOUISE S. SCHOFIELD |
| | | | HON. ROBERT J MALONE |
| | | | HON. MICHAEL E. SHAY |
| | | | HON. ROBERT L. GENUARIO |
| | | | HON MARGARITA H MOORE |

### Party/Attorney or Self-Represented Information

| Party Name | Trial Court Party Class | Case Affiliation | Appeal Party Class |
|---|---|---|---|
| **Party(ies) for: AC 45708** | | | |
| FERNANDO GABRI IRAZU | Defendant | Defendant | Appellant |
| Self Rep: FERNANDO GABRI IRAZU | | | |
| MARGARITA OLIVA SAINZ DE AJA | Plaintiff | Plaintiff | Appellee |
| (Juris: 300089 COLLINS & POWERS LLC ATTORNEYS AT LAW | | | |
| **Party(ies) for: AC 45708A01** | | | |
| FERNANDO GABRI IRAZU | Defendant | Defendant | Appellant – Amended Appeal |
| Self Rep: FERNANDO GABRI IRAZU | | | |
| MARGARITA OLIVA SAINZ DE AJA | Plaintiff | Plaintiff | Appellee |
| (Juris: 300089 COLLINS & POWERS LLC ATTORNEYS AT LAW | | | |
| **Party(ies) for: AC 45708X01** | | | |
| MARGARITA OLIVA SAINZ DE AJA | Plaintiff | Plaintiff | Cross Appellant |
| (Juris: 300089 COLLINS & POWERS LLC ATTORNEYS AT LAW | | | |
| FERNANDO GABRI IRAZU | Defendant | Defendant | Cross Appellee |
| Self Rep: FERNANDO GABRI IRAZU | | | |

### Transcripts and Exhibits

Exhibits Received By Court:

| Party | Transcripts Ordered | Estimated Delivery Date | Delivered To Party | Pages | Delivered To Court |
|---|---|---|---|---|---|
| FERNANDO GABRI IRAZU | 08/15/2022 | | | | |

### Preliminary Papers

| Party Name | Preliminary Statement of Issues | Certificate re Transcript Received | Docketing Statement | PAC Statement | Constitutionality Notice | Sealing Notice | Certificate of Interested Entities |
|---|---|---|---|---|---|---|---|
| FERNANDO GABRI IRAZU | 08/22/2022 | 08/15/2022 | 08/15/2022 | 08/22/2022 | | | |
| Amended | | | 08/22/2022 | | | | |

### Briefs

**Case Activity**

| Activity | Number | Date filed | Initiated By | Description | Action | Action Date | Notice Date |
|---|---|---|---|---|---|---|---|
| APPEAL | AC 45708 | 08/09/2022 | | Direct Appeal | Filed | | |
| TC MOTION | AC 225033 | 08/11/2022 | FERNANDO GABRI IRAZU | Motion for Articulation (Trial Court Only) | Denied | 01/10/2023 | 01/13/2023 |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/11/2022 | | Correspondence from Court | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/12/2022 | | Appellate Electronic Access form | Returned | | |
| MOTION | AC 222272 | 08/15/2022 | FERNANDO GABRI IRAZU | Motion - Other | Other | 08/16/2022 | 08/16/2022 |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/15/2022 | | Certificate Regarding Transcripts | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/15/2022 | | Docketing Statement | Filed | | |
| ORDER | AC 222272 | 08/16/2022 | | Clerk uploaded Order | Filed | | |
| CROSS APPEAL | AC 45708 | 08/16/2022 | | E-filed Cross Appeal | Filed | | |
| CROSS APPEAL | AC 45708 | 08/16/2022 | | E-filed Cross Appeal | Returned | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Appellate Electronic Access form | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Certificate Regarding Transcripts | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Designation of the Contents of the Clerk Appendix | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Docketing Statement | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Pre Argument Conference Statement | Filed | | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/22/2022 | | Preliminary Statement of Issues | Filed | | |
| MOTION FOR EXTENSION | AC 2230294 | 08/22/2022 | FERNANDO GABRI IRAZU | Appellant Preliminary Papers Extension Date: | Denied | 08/24/2022 | 08/24/2022 |
| MOTION | AC 222324 | 08/24/2022 | FERNANDO GABRI IRAZU | Motion for Review | Other | 11/02/2022 | 11/03/2022 |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 08/24/2022 | | Appellate Electronic Access form | Filed | | |
| MOTION | AC 222420 | 09/12/2022 | MARGARITA OLIVA SAINZ DE AJA ; FERNANDO GABRI IRAZU | Motion for Order | Other | 11/02/2022 | 11/03/2022 |
| MOTION | AC 222447 | 09/14/2022 | FERNANDO GABRI IRAZU | Motion - Other | Dismissed | 11/02/2022 | 11/03/2022 |
| AMENDED APPEAL | AC 45708 | 09/19/2022 | | Clerk uploaded Amended Appeal | Filed | | |
| MOTION | AC 222716 | 10/26/2022 | FERNANDO GABRI IRAZU | Motion - Other | Returned | 11/02/2022 | 11/03/2022 |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 11/03/2022 | | Correspondence from Court | Filed | | |
| ORDER | AC 222324 | 11/03/2022 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 222420 | 11/03/2022 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 222447 | 11/03/2022 | | Clerk uploaded Order | Filed | | |
| PRELIMINARY PAPER/APPEAL | | 11/08/2022 | | Correspondence to Court | Filed | | |

A- 9

DOCUMENTS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MOTION | AC 222794 | 11/10/2022 | FERNANDO GABRI IRAZU | Motion for Order | Denied | 05/24/2023 | 05/24/2023 |
| MOTION | AC 222795 | 11/10/2022 | FERNANDO GABRI IRAZU | Motion for Reconsideration En Banc | Denied | 12/13/2022 | 12/13/2022 |
| MOTION | AC 222796 | 11/10/2022 | FERNANDO GABRI IRAZU | Motion - Other | Denied | 05/24/2023 | 05/24/2023 |
| MOTION | AC 222797 | 11/10/2022 | FERNANDO GABRI IRAZU | Motion for Review | Other | 11/15/2022 | 11/15/2022 |
| ORDER | AC 222797 | 11/15/2022 | | Clerk uploaded Order | Filed | | |
| MOTION | AC 222881 | 11/23/2022 | FERNANDO GABRI IRAZU | Motion for Reconsideration En Banc | Denied | 12/13/2022 | 12/13/2022 |
| ORDER | AC 222795 | 12/13/2022 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 222881 | 12/13/2022 | | Clerk uploaded Order | Filed | | |
| MOTION | AC 223039 | 12/21/2022 | FERNANDO GABRI IRAZU | Motion - Other | Returned | 12/21/2022 | 12/21/2022 |
| ORDER | AC 225033 | 01/10/2023 | | Clerk uploaded Order | Filed | | |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Clerk Uploaded Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223901 | 01/17/2023 | FERNANDO GABRI IRAZU | Motion for Review | Other | 05/24/2023 | 05/24/2023 |
| MOTION | AC 223953 | 05/18/2023 | FERNANDO GABRI IRAZU | Motion - Other | Other | 05/24/2023 | 05/24/2023 |
| ORDER | AC 222794 | 05/24/2023 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 222796 | 05/24/2023 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 223901 | 05/24/2023 | | Clerk uploaded Order | Filed | | |
| ORDER | AC 223953 | 05/24/2023 | | Clerk uploaded Order | Filed | | |
| MOTION | AC 224047 | 06/02/2023 | FERNANDO GABRI IRAZU | Motion for Reconsideration & Reconsideration En Banc | Denied | 07/26/2023 | 07/26/2023 |
| DELINQUENCY ORDER | 230007 | 07/05/2023 | | Clerk uploaded Delinquency Order | Filed | | |
| DELINQUENCY ORDER | 230007 | 07/05/2023 | Court | NISI Preliminary Papers – All | Compliance | 07/14/2023 | 07/05/2023 |
| PRELIMINARY PAPER/APPEAL | | 07/14/2023 | | Certificate Regarding Transcripts | Filed | | |

DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 07/14/2023 | Designation of the Contents of the Clerk Appendix | Filed | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 07/14/2023 | Docketing Statement | Filed | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 07/14/2023 | Preliminary Statement of Issues | Filed | |
| ORDER | AC 224047 | 07/26/2023 | Clerk uploaded Order | Filed | |
| PRELIMINARY PAPER/APPEAL DOCUMENTS | | 07/27/2023 | Appeal Transcript Order Acknowledgement from Court Reporter | Filed | |
| MOTION | AC 232168 | 07/31/2023 FERNANDO GABRI IRAZU | Motion to Dismiss Cross Appeal | Filed | |
| MOTION | AC 232240 | 08/08/2023 FERNANDO GABRI IRAZU | Motion - Other | Returned | 08/08/2023 08/08/2023 |

**APPENDIX 1 B.**

- Mr. Fernando G. IRAZU's *Motion to Dismiss Cross-Appeal* of 7/31/2023.

AC 45708                    )                APPELLATE COURT

MARGARITA OLIVA SAINZ DE AJA   V.      )           STATE OF CONNECTICUT

FERNANDO GABRIEL IRAZU           )             JULY 28, 2023

## <u>MOTION TO DISMISS CROSS APPEAL</u>

Fernando G. Irazu (the "Defendant") timely moves the Court to dismiss the untimely and non-compliant cross-appeal of 8/6/2022 pursued by Margarita Oliva Sainz de Aja, represented by Attorney Kevin F. Collins (the "Plaintiff"), as a result of recent illegal filings of 7/27/2023 and 7/14/2023 and a *sua sponte* order from 7/5/2023 –notified to this party on 7/27/2023.

### I.     <u>BRIEF HISTORY OF THE CASE</u>

**1.** This is a family case tainted by alleged and proven criminal activity that requires rulings form the local legal system to be consummated. The underlying proceedings entail almost 14 years of abusive, vexatious and fraudulent litigation solely pursued by the other side in both the US and Europe. As a result of the impact of such litigation, the Defendant was declared indigent by both the US District Court of the State of Connecticut and the trial court (# 369) –the latter due to a *Motion for Review* granted by this Court last 5/11/2022 (# 367).

**2.** The parties got divorced pursuant to the *Memorandum of Decision* of 9/2/2010 (Harrigan, J.) (# 150) from the Superior Court of Stamford; and subsequently entered into the *Court-mandated Stipulation* of 6/10/2016 (Tindill, J) (# 210). By now the parties have three adult children fruit of their union: a girl who finished college in 5/2020; a boy who is a senior in college in the UK; and a girl who commenced college in 9/2022.

3.   The substantive judgment of the trial Court under appeal is dated 7/26/2022 (# 377) and allocated $1,670,677.64 from the sale proceeds of the parties' joint-owned property as follows: $267,713.03 to the Defendant and $1,154,554.97 to the Plaintiff. This divestiture was untimely, against Court orders, hurt this party, and went completely unsanctioned.

4.   Such ruling did declare the Plaintiff in contempt to Court for listing the property at a different price ($1,600,000) from the mandated one ($1,250,000) by Court order, yet without any financial consequences. The other side alone had requested and pursued the mandated listing price of $1,250,000 in order to keep the house for themselves without any sale process –by also arguing sums this party did not owe.

5.   When the Plaintiff realized the house had in fact to be sold to third parties, and she didn't want to buy the Defendant's equity stake at market prices, last 4/2022 (a year later from the mandated listing price by Court order) the other side then listed the house on their own at a higher price against court orders but way short of the $1,800,000 valuation (with a $1,795,000 listing agreement from Coldwell Banker) from 4/2021 –when the house should in fact have been listed by Court orders pursuant to such valuation/listing agreement. There is a listing gap of roughly $200,000, and more than a year of delays and damages.

6.   The ruling from Judge Moukawsher entirely ignored the Plaintiff's flagrant contempt to court as to her willful and malicious refusal to list the house for sale on or before 4/2021. This very specific contempt was treated as if never happened; it was purposely obviated and this party couldn't even argue his motion against the other side

(# 289, # 287).[1]  It simply evaporated; like the Defendant's *Motion to Dismiss and Order* from 3/2020 (# 284, # 283, # 285, # 286) –it never existed for the district court.[2]

7.    Although Judge Moukawsher's ruling did declare the Plaintiff in contempt for violating his clear order regarding the listing price of $1,250,000 –the Defendant had availed himself not only to be bought out but also to agree on a new listing price, hopefully settle all issues, and then revert to Court for approval–,[3] it was in fact the very same

---

[1] Never heard and ruled upon. For not listing the property for sale on or before 4/1/2021 under any circumstances against prov. 3a, *Memorandum of Decision* of 9/2/2010 and prov. 4, *Stipulation* of 6/10/2016.

[2] Never heard and ruled upon by Judge Margarita Hartley-Moore, Judge Donna Heller and Judge Thomas Moukawsher. This litigation started with the Plaintiff's fraudulent and vexatious motion for educational support orders of 3/3/2020, which was never legally served (there is not even a return on record) and without subject-matter jurisdiction; *in re, Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut,* 311 Conn. 123, 128 (2014).

[3] "Margarita has requested that I reply directly to your email …[…]…Your heightened sense of urgency is not shared …[…]…. I must take this opportunity to confirm that the clear Order of the Court is that the property will be listed for sale at the established FMV of $1.25 mm. I infer from your emails that you interpret the Orders to mean that the property may or will be listed at a greater selling price. That is not the case. It will be listed at the aforementioned price…[…]… Margarita could buy out the property at that price [$1.25 mm]…[…]…Please refer to my calculations which accompanied my settlement

order/listing price they alone wanted and pursued until the end. Judge Moukawsher's order for $1,250,000 was indeed the other side's order: it was the fraudulent valuation/listing price they alone wanted.

————————————————

proposal [$50,000] sent to you last week. That is a reasonably accurate prognostication as to your distribution at $1.25 mm. That offer remains open until withdrawn in writing in the event that you would like to avail yourself in light of the orders of the Court as to the listing price and likely distribution to you…", Attorney Kevin Collins, correspondence to Mr. Fernando Irazu, 2/2/2022, Defendant's Exhibit A – 1.

"My view is that we should jointly appoint someone we both trust personally and professionally, with the goal of maximizing the true value of our jointly-owned property in the market. And then revert to the Court with a common view / proposal as to the jointly designated real estate broker, as well as the proposed listing value by the two of us to avoid losing hundreds of thousands of dollars. Coldwell Banker did produce a comparable valuation of our jointly-owned property for $1,800,000 last 2/22/20221, which was shared with you last 2/23/2021 (once more attached herein).", Mr. Fernando Irazu, correspondence to Ms. Margarita Oliva, 1/31/2022, Defendant's Exhibit A – 1.

"I also understand you have told the kids you will move to another place…[…]…I'm open for us to work in a private agreement on it in a civilized fashion. If you think that a third-party could help us, if necessary, without contentiousness or party counsel, I'm also in favor of it. It would probably be convenient.", Mr. Fernando Irazu, correspondence to Ms. Margarita Oliva before she unilaterally decided to list the property for sale against Court orders, 4/12/2022, Defendant's Exhibit B – 1.

**8.** Irrespective of the ruling for contempt, Judge Moukawsher denied any monetary sanctions, legal fees and expenses to the Defendant (a US licensed attorney) as well as ignored outstanding relevant issues timely raised by this party requiring legal and equitable remedies.

**9.** Judge Moukawsher also granted the Plaintiff with the opportunity to reargue against such ruling of contempt (# 382) –but denied this party the possibility of rearguing anything at all (# 378). An additional hearing on such flagrant despise for the law was conducted, and the parties even had to submit memoranda on it. The ruling of contempt was affirmed last 12/28/2022 because the other side's criminal scheme was clearly validated; never the informal lies and defamation against this party pushed forward within the local legal system. The other side consented such ruling.

**10.** Last 8/2022 the Defendant claimed an overall credit of at least $605,586.07 or $873,299.10 in total allocation to him, a figure that must be adjusted to the present time. In the end, Judge Moukawsher's rulings not only hurt both parties but illegally took funds from the Defendant; did not sanction the other side for their misdeeds; and did not grant legal fees and expenses to this party (a US licensed attorney).

**11.** Judge Moukawsher's core ruling of 7/26/2022 was appealed by the Defendant last 8/9/2022 (# 379); and cross-appealed by the Plaintiff last 8/16/2022 insofar the ruling of contempt against her (# 384).

**12.** The Defendant also requested the disqualification of Judge Thomas Moukawsher on objective grounds via a *Motion to Disqualify* last 8/31/2022 (# 388), which was denied by him last 9/9/2022 (# 388.10). Such ruling was timely appealed by the

Defendant per AC 45827; and it was consolidated *sua sponte* under AC 45708. The district court has continued to intervene and rule on various issues up to now.

## II. <u>SPECIFIC ISSUES</u>

**13.** The Plaintiff's cross-appeal of 8/16/2022 was returned by the Court on such same date and it was never refiled and accepted by the Court. There is no valid cross-appeal on file. The present request for its dismissal is also timely as a result of the recent illegal filings.

**14.** Almost a year later, on 7/5/2023, Attorney Luke Matyi issued an order on behalf of the Court, *sua sponte*, granting the Plaintiff with the opportunity to file all preliminary papers until 7/17/2023 (notified to the Defendant on 7/27/2023). There is no party request for it on record, simply the order from the case manager for that to be the case.

## III. <u>LEGAL GROUNDS</u>

**15.** Rules do serve a purpose in allowing all parties to conduct themselves similarly and to be treated equally; and the Court certainly enjoys discretion when a strict adherence to those rules can operate injustices as opposed to protecting the even field all parties must be subject to; when as a matter of fact such rigidity causes a serious injustice because of the context and specific circumstances of time and space around more vulnerable people with first and last names (Sec. 60-1, Rules of Appellate Procedure).

**16.** Having said that, in the present case the Plaintiff did not cure any deficiency in the original return of 8/16/2022 according to law (Sec. 62-7 (a), Rules of Appellate Procedure). A motion to dismiss was never required because there was and there is no

valid cross-appeal on file. The illegal cross-appeal was never legally cured on file. The Plaintiff is a wealthy attorney represented by an expert litigator of several decades and with very familiar access to the legal system of Connecticut.

17. Moreover, the Plaintiff neither complied for almost a year with all preliminary filings mandated by law within the proper timeframe (Sec. 63-4, 63-8, Rules of Appellate Procedure). Even more concerning, if we take into account that the other side claimed before the district court that they didn't mean to appeal anything at all.

18. From the Defendant's perspective, Attorney Luke Matyi's Order of 7/5/2023 (never communicated to this party until 7/27/2023) is a tailor-made rule for the other side without a formal request and without a proper refiling of the cross-appeal. In particular, if we consider that the Defendant has endured uncountable rejections by this officer even against the law itself. None of this party's sound requests have found any justice at this level so far.

19. From Buenos Aires, Argentina, without access to eservices until today, and after almost 14 years of abusive and vexatious litigation within this forum, at the very least, it is not much to ask for a fair and equal treatment.

20. Based on the timeframe of events described above, the motion herein is timely filed:

> "If the ground alleged for dismissal of an appeal or writ of error, other than a lack of jurisdiction, subsequently arises, a motion to dismiss must be filed within ten days after such ground for dismissal arises. The court may on its own motion order that an appeal or writ of error be dismissed for lack of jurisdiction or other defect." Sec. 66-8, Rules of Appellate Procedure.

21. Despite all of the prior, the second set of illegal filings was completed on 7/27/2023, yet based on a return never properly cured from 8/16/2022, thus entirely void

and nonetheless 10 days from today.

**22.** On 7/27/2023 Attorney Luke Matyi communicated an order from the Court denying the Defendant's *Motion for Reconsideration en banc* dated 6/2/2023.

**23.** More hearings have recently taken place and further transcripts shall be required.

**IV.** <u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, the Defendant respectfully pleads the Court to dismiss the Plaintiff's cross-appeal and ancillary documentation based on applicable law, as well as on its own power based on equity and fairness.

DATED at Buenos Aires, July 28, 2023.

Fernando G. IRAZU, *Pro-Se*
Defendant-Appellant
Billinghurst 1656, 2A
Buenos Aires, 1425
ARGENTINA
fgirazu@gmail.com
+5411-4824-1067

8

## **CERTIFICATION PURSUANT TO P.B. § 62-7**

I hereby certify the following pursuant to P.B. § 62-7, Rules of Appellate Procedure:

(i) A copy of the aforesaid motion has been electronically delivered to:

> Margarita OLIVA SAINZ de AJA
> m.olivasainz@gmail.com
> 203-550-4162
>
> LAW OFFICES OF KEVIN F. COLLINS
> Kevin COLLINS
> 1177 Summer Street # 403
> Stamford, CT 06905
> kfc@collinspowers.com
> 203-327-5400

(ii) The document has been redacted or does not contain any names or other personal identifying information that is prohibited from disclosure by rule, statute, court order or case law.

(iii) The document complies with all applicable rules of appellate procedure.

> DATED July 28, 2023, Buenos Aires, ARGENTINA.

> By: _____
>
> Fernando G. IRAZU, *Pro-Se*
> Defendant-Appellant
> Billinghurst 1656, 2A
> Buenos Aires, 1425
> ARGENTINA
> fgirazu@gmail.com
> +5411-4824-1067

**APPENDIX 1 C.**

- Mr. Fernando G. IRAZU's *Restated Motion for Contempt Post-Judgment* of 8/7/2023.

D.N. FBT FA 09-4057168-S )                   SUPERIOR COURT

MARGARITA OLIVA SAINZ DE AJA )            JUDICIAL DISTRICT
V.                                                        OF FAIRFIELD/
                                                          AT BRIDGEPORT

FERNANDO GABRIEL IRAZU )              August 7, 2023


## **DEFENDANT'S RESTATED MOTION FOR CONTEMPT POST-JUDGMENT**


Fernando Gabriel IRAZU, *Pro Se* (the "Defendant"), hereby respectfully files a *Restated*

*Motion for Contempt Post-Judgment* against Margarita OLIVA SAINZ de AJA, represented by

Attorney Kevin COLLINS (the "Plaintiff"), for violation of the following Court orders:

**a.** <u>Illegal and Fraudulent Refusal to List the Joint-Owned Property of the Parties for Sale on or before 4/1/2021</u>.

"On or before April 1, 2021, the year in which the youngest child reaches 18, the parties shall list the property for sale with a real estate broker…",  Provision 3a., *Memorandum of Decision* of 9/1/2010.

**b.** <u>Illegal and Fraudulent Change of Beneficiaries in each of the Parties' $1,000,000 Life Insurance Policies with Northwestern Mutual</u>.

"The Plaintiff is hereby obliged to pay for and maintain in effect the insurance policy on the life of the Defendant for the exclusive equal benefit of the party's three (3) children until the youngest child attains the age of twenty-three (23) years.",  Provision 8, *Stipulation* of 6/10/2016.

"…. Northwestern Mutual Term Life insurance policy on the life of the husband in the face amount of $1,000,000 for the benefit of the three children of the marriage until the youngest child reaches the age of twenty- three."  Provision 5.a., *Memorandum of Decision* of 9/1/2010.

" …. Northwestern Mutual term life insurance policy on her life in the face amount of $1,000,000 for the benefit of the minor children until the youngest child reaches age twenty-three.", Provision 5.b., *Memorandum of Decision* of 9/1/2010.

1

I.      **FACTS**

      a.      **Refusal to List the Joint-Owned Property of the Parties for Sale on or before 4/1/2021**

1.         In 2020 the Plaintiff engaged in a criminal scheme to defraud the Defendant in connection with their joint-owned property located 10 Indian Pass, Greenwich, which in the end was sold for $1,671,000 in 4/2022 against Court orders, and the Plaintiff was declared in contempt to court for it.  Only the Plaintiff was granted with the opportunity to reargue the rulings of the Court allocating the sale proceeds between the parties and declaring her in contempt to court.  Another hearing was conducted on the topic of contempt; both parties were ordered to submit memoranda; and subsequently the ruling was affirmed by the Court (# 360, # 377, # 382, # 397, # 411, # 421).

2.         However, pursuant to court orders the property should have been listed for sale on or before 4/1/2021 based on a valuation of $1,800,000 (falsely denied and subsequently admitted under oath) and a Listing Agreement from Coldwell Banker for $1,795,000 (admitted).[1]  Based on evidence on record, the Plaintiff argued: (i) the property was worth $975,000; (ii) this party owed her money and should receive no funds; and (iii) she can keep the house without further due, meaning no compliance with court orders by her own willful decision.[2]  The Plaintiff did keep the house by her own volition,

---

[1] *Plaintiff's Response to Defendant's Request for Admissions for Trial Use of 1/10/2022*, Requests # 56, # 52, # 53, # 55 (admitted), # 51, # 57 (falsely denied); Defendant's Exhibit I – 1, V – 1, E – 1, O – 1, B – 1; Defendant's Exhibits U, W, Y, Z, AA of 1/26/2022.

[2] "I previously informed you that we had obtained an appraisal of the above premises which resulted in the establishment of a FMV of $975,000.  Your proposal that the property be listed at almost twice FMV is preposterous …[…]… It should be noted that a non-cash purchaser, which is most of the buying public, would have to secure a lender who would in turn require an appraisal.  No lender would approve a mortgage *[ultimately up to $1.6 mm over a sales price of $2 mm]* towards a purchase price which is baselessly, substantially in excess of appraised value.  Indeed, the lender's underwriter would rely on an appraisal.  Hence, it is obvious and axiomatic, that an appraisal is the standard.",  Attorney Kevin Collins, correspondence to Mr. Fernando Irazu of 3/30/2021 refusing to list the joint-owned property for sale via a Listing Agreement of $1.795 mm from Coldwell Banker on or before 4/1/2021 per Court orders, Defendant's Exhibit I – 1.

2

without Court intervention or ruling allowing her not to comply with the mandated listing, in fact

against the order stipulating such listing on or before 4/1/2021.

    **3.**      The Defendant timely filed two motions of contempt against the Plaintiff due to such

flagrant violation (# 289, # 287).  But the Defendant was not granted with the opportunity to be heard

on this issue and the Court did not expressly rule on it.

    **4.**      Having said all of the prior, the Court did acknowledge the nefarious scheme put

forward by the other side to defraud (literally steal from this party) by purposely reducing the

property's price and claiming on her own that there was no need for any listing or sale process –that she

should be the sole owner of the house from then on.  The property acquired with the fruit of the

Defendant's exclusive effort (with very little debt), which was left for his children and their mother to

reside on for a number of years during the divorce process in exchange for truthful coparenting (a core

duty the Plaintiff also dishonored and violated), would thus be stolen from him via some Court decree

indirectly crafted by the other side.  The Defendant claims such a scheme entails plain criminal activity

punishable by federal, local and international normative.

    **5.**      This is what the Court had to say about such scheme last 10/6/2022 (# 398):

> "This one [Judge Moukawsher] held he [Mr. Irazu] was right about one thing: his [former] wife
> was undervaluing the marital home that had to be sold [a year before pursuant to a valuation of
> $1,800,000 and a listing agreement of $1,795,000 based on Court orders] when she thought she
> might acquire it [a year later after refusing to list it by arguing at inception a valuation of
> $975,000 just to keep it without any listing/sale process], only to list it for a higher price
> [$1,600,000] when she realized it would be sold to a third party—going so far as to disobey a
> court order about the listing price [$1,250,000, the final listing price put forward by Ms. Oliva
> and the only one accepted by the Court]. But Mr. Irazu is wrong to suggest that his [former]
> wife's maneuvering for advantage in her litigation means that the entire case should be
> relitigated with him receiving everything he wants."

    **6.**      The Defendant not only didn't get anything at all as a result of the damages pegged to

the criminal plot described herein –not even the legal fees and expenses this US attorney at law is

3

entitled to–, but also hundreds of thousands of dollars were taken away from him against applicable law and a basic sense of fairness.

      b.   **Change of Beneficiaries in each of the Parties' $1,000,000 Life Insurance Policies with Northwestern Mutual**

    **7.**     Both life insurance policies on the lives of each of the parties for $1,000,000 with Northwestern Mutual are under the ownership of the Plaintiff. The Defendant was stripped of such basic right per Court orders last 11/2010 (# 150, # 153).

    **8.**     Those life insurance policies did not operate as some sort of security for child-support payments (subject to the Defendant's income power) or alimony (never granted); they were rather established for the exclusive equal benefit of the three children of the parties –for their own future wellbeing. The claim herein is on their behalf, for their own benefit.

    **9.**     In 2015 the Plaintiff established a *Revocable Trust Agreement*, in which she is the sole grantor and trustee, and, in a concealed and fraudulent fashion, she placed such trust/herself as the beneficiary in the life insurance policies of both parties. As a result, the eventual proceeds from both life insurance policies were illegally transferred from the direct patrimony or estate of the children to the Plaintiff's own patrimony or estate.

    **10.**     Thus, the destiny of those eventual proceeds are subject to her own will, or the will of her alternative designated trustees, as well as conditioned upon by her own debts and ancillary. Indeed, those funds could be allocated, under the terms of such trust, in any way, shape or form the Plaintiff or her alternative designated trustees might so desire: the children might not get any those funds, and if they do some of the children might get it all or more than others.

    **11.**     The Defendant argued contempt to court for it and also highlighted this misdeed in his *Motion to Dismiss and Order* (including the pertinent *Memorandum of Law*) from 3/2020 (# 283, # 284, # 285, # 286), which was filed against the Plaintiff's vexatious action for college expenses also

4

from 3/2020 (# 281).  This motion to dismiss was ignored by the Court, including the request for

contempt regarding the illegal maneuvers from the Plaintiff in connection with both life insurance

policies.

**12.**　　Last 5/2023 the Court denied some requests from the Plaintiff to reduce the death

benefit on her own life insurance policy. In addition, the Plaintiff was ordered by the Court to provide a

copy of the 2015 *Revocable Trust Agreement*, but only part of it was surrendered (# 442).  The Court

also ordered the Plaintiff to place the children of the parties as the exclusive beneficiaries in equal

shares of their father's $1,000,000 life insurance policy (# 450).  But the Court did not order the

Plaintiff to name the three children as exclusive equal beneficiaries of her own life insurance policy;

and obviated to declare her in contempt to court for such misdeeds.

**13.**　　As a matter of fact, the Plaintiff still refuses to surrender copies of both life insurance

policies to both the Court and this party.  However, last 6/13/2023 the Plaintiff did surrender a piece of

paper that offers no concrete proof of such mandated modification, which must include both life

insurance policies of the parties (# 454).  The children are the mandated beneficiaries of them, in equal

shares; they are all adult; and they must be inscribed in both policies as such.  There is no financial

benefit or otherwise for the Defendant in this request, simply the wellbeing of his children.

**14.**　　If the Plaintiff refuses to surrender the life insurance policies, it might due to the fact

that she has converted her own term-life insurance policy into a universal one or alike (retirement

income), something this party expressly pleaded for in 2009-2010 (divorce process) and the other side

unreasonably objected.

**15.**　　Both life insurance policies with Northwestern Mutual must be surrendered in order to

determine whether the Plaintiff has also incurred any further illegal modification.

5

16.     Moreover, the Defendant expects to be the owner over his own life insurance policy. The premiums of both life insurance policies must be afforded under Court orders by the Plaintiff.

## II.     <u>LEGAL GROUNDS</u>

17.     As a principle of law, full or partial non-compliance with past Court orders entails sufficient grounds for a ruling of contempt and sanctions. All of the Plaintiff's decisions have been willful, based on an unmistaken knowledge of the clear orders of the Court (something recognized under oath by her on record), while counting on the expert advice of Attorney Kevin F. Collins.   Both of them acted in a symbiotic fashion over the years, and it must be added that Attorney Collins also acted as a trustee of the Court and party counsel on a simultaneous basis for several years.

> ***Equitable powers and adjustments in family matters***.  "In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court ... For that reason, equitable remedies are not bound by formula but are molded to the needs of justice.", *in re, Oneglia v. Oneglia*, 14 Conn. App. 267, 271-272, 540 A.2d 713 (1988).

> ***Bad faith and fraud***.  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not promoted by an honest mistake as to one's right or duties, but by some interested or sinister motive ... Bad faith means more than mere negligence; it involves a dishonest purpose.", *in re*, *Landry v, Spitz*, 102 Conn. App. 34, 42-43 (2007).

> ***Improper litigation techniques***. "[R]ealizing financial or other benefit from improper delay in litigation is not a legitimate interest in the client ... because such actions diminish the vitality of our bar and erode the confidence of the public by allowing justice and civility to take a back seat to gamesmanship and guile.", *in re, Pavone v. West,* 22 Conn. App. 623, 632-33 (2004).

> ***Abuse of process***.  Abuse of process is not a novel tactic, and it has been defined as the *"the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process.", in re, Board of Educ. v. Farmingdale*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (N.Y. 1975).

> ***Contempt to court for violation of past Court orders***.  As a strict principle of law and irrespective of the specific facts of any given case, it has been clearly established that there is no abuse of discretion by the Court when finding a party in contempt to court for partial

6

compliance –not even full non-compliance as in the present case–with past court orders, *in re, Kasowitz v. Kasowitz,* 140 Conn. App. 507, 59 A.3d. 347 (2013);[3] among multiple others.

**Contempt to court: Court orders must be obeyed; there is no privilege**. "... an order entered by a court with proper jurisdiction 'must be obeyed by the parties until it is reversed by orderly and proper proceedings.' (Internal quotation marks omitted.) [*Cologne v. Westfarms Associates*, 197 Conn. 141, 145, 496 A.2d 476 (1985)] Id. We noted that a party has a duty to obey a court order 'however erroneous the action of the court may be....' [...] We registered our agreement with the 'long- standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed....' [...] Finally, we emphasized that 'court orders must be obeyed; there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid.'", *in re, Mullholland v. Mulholland*, 229 Conn. 643, 649, 643 A.2d 246 (1994).

**Contempt to court: an order must be followed until modified or successfully challenged**. "'In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. *Eldridge v. Eldridge*, [supra, 244 Conn. at 530, 710 A.2d 757]; *Behrns v. Behrns*, [supra, 80 Conn.App. at 289, 835 A.2d 68]. Our Supreme Court repeatedly has advised parties against engaging in 'self- help' and has stressed that an 'order of the court must be obeyed until it has been modified or successfully challenged.'... *Sablosky v. Sablosky*, [258 Conn. 713, 719, 784 A.2d 890 (2001)].'", *in re, Behrns v. Behrns*, 124 Conn. App. 794, 809, 6 A.3d 184 (2010).

**Contempt to court: Court's finding a party has disobeyed its orders**. "'To find a party in contempt, a trial court must conclude that a party has disobeyed an order of the court. Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense.... A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him.' (Citations omitted; internal quotation marks omitted.) *Fitzgerald v. Fitzgerald*, 16 Conn. App. 548, 551, 547 A.2d 1387, cert. denied, 210 Conn. 802, 553 A.2d 615 (1988).", *in re, Castro v. Castro*, 31 Conn. App. 761, 764, 627 A.2d 452 (1993).

**Availability of sanctions in family matters even regarding unenforceable Court orders due to violations / contempt**. "As to the effectiveness of any relief, Ms. Chafin asserts that even if the habitual residence ruling were reversed and the District Court were to issue a re-return order, that relief would be ineffectual because Scotland would simply ignore it. But even if Scotland were to ignore a U. S. re-return order, or decline to assist in enforcing it, *this case would not be moot. The U. S. courts continue to have personal jurisdiction over Ms. Chafin, may command*

---

[3] The reason being that the contrary would imply giving free range for illegal activity and full impunity to parents upon a child reaching 18 years old, and/or granting impunity to those same parents for a variety of financial and patrimonial misdeeds that could even reach the level of criminal behavior. It is not only preposterous to argue the Court cannot go back in time to review any given compliance with past orders, but also strictly offensive to parents who are defrauded and/or lose the relationship with their children due to violations to Court orders, while those very same children are in turn severely hurt by such undue parental behavior.

*her to take action even outside the United States, and may back up any such command with sanctions...[...]... Importantly, whether at the district or appellate court level, courts can and should take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation.*", *in re, Chafin v. Chafin,* 133 U.S. 1017, 185 (2013).

**Court's inferences as to lack of credibility.** It has been established that the court can draw adverse inferences as to one party's credibility in areas other than finances when she files –or hands it to the other party without actually filing it– a misleading financial affidavit. Therefore, it can only be concluded as the flip side of the same coin that falsehoods in areas other than finances can also affect certain party's credibility in finances, not only because they can be manifest in themselves but more importantly because undue financial benefits have been the exclusive driver of certain actions, *in re, Voloshin v. Voloshin,* 12 Conn. App. 626, 533 A.2d 573 (1987).

**Agent & principal dynamics regarding contempt to Court and/or unethical and criminal conduct**. "It is a general rule of agency law that a principal is bound by its agent's acts when the agent is acting with actual or apparent authority or when the principal ratifies the agent's acts. Thus, a Connecticut court held that a defendant could be held liable for violating the Connecticut Unfair Trade Practices Act based on its lawyer's conduct during negotiations to sell land. Because the lawyer was acting within the scope of his authority at the time of the conduct at issue, his actions could be imputed to the defendant for purposes of establishing a CUTPA violation.", *in re, Landmark Inv. Grp., LLC v. Chung Family Realty P'ship, LLC,* 10 A.3d 61, 81 Conn. App. Ct. (2010), quoted in Richmond, Douglas R., "Sanctioning Clients for Lawyers' Misconduct – Problems of Agency and Equity," Michigan State Law Review, Vol. 835 (2012), pages 838-839.

**Conflict of interest between attorney and client when sanctions are at stake.** A potential conflict of interest is inherent when a party seeks sanctions against a client and lawyer jointly, *in re, Crawford v. Katz,* 32 A.3d 418,435 (D.C. 2011) (citing *Healey v. Chelsea Res., Ltd.,* 947 F.2d 611, 623 (2d Cir. 1991)), quoted in Richmond, Douglas R., "Sanctioning clients for lawyers' misconduct – problems of agency and equity", *Michigan State Law Review*, 835 (2012), page 858.

**Concealed and/or denied evidence as a serious misdeed**. The courts have shown displeasure with coordinated effort to conceal evidence that would have revealed the scheme of fraud, deeming both the client and the lawyers to be joint and severally liable for their conduct, *in re, Wade v. Soo Line Railroad Corp.*, 500 F.3d 559 (7th Cir. 2007).

**Attorney's unethical behavior for violation of subpoenas / orders from the Court.** An attorney was found to have violated ethical rules for disregarding a subpoena to a Grievance Committee hearing, *in re, Statewide Grievance Committee v. McGee,* No. 020099371, 2003 WL 22333084, Connecticut Superior Court (10/2/2003).

**Attorney's unethical behavior for inappropriately coaching his client**. The law punishes a counsel's conduct prejudicial to the administration of justice [Rule 8.4, *Rules of Professional*

8

*Conduct*] when it is found that he inappropriately coaches his client and speaks baseless objections, *in re, Faile v. Zairich*, No HHDX04CV065015994, 2009 WL 2036786, Connecticut Superior Court (June 15, 2009).

**Coordinated client-attorney litigation misconduct.** "It is also logical that where a lawyer and the lawyer's client are guilty of coordinated litigation misconduct, the court may sanction them both and either hold them liable jointly and severally, or allocate or apportion sanctions between them.", Richmond, Douglass, "Sanctioning clients for lawyers' misconduct – problems of agency and equity", *Michigan State Law Review*, 835 (2012), pages 836-837.

**Judicial disciplinary powers against attorney misconduct**. The judicial branch possesses inherent authority to discipline and sanction unethical actions that do not even require a specific statutory rule to deem them reproachable, *in re*, *CFM of Connecticut, Inc. v. Chowdry*, 239 Conn. 375 (1996), overturned in part on other grounds, *State v. Salmon*, 250 Conn. 177 (1999), including, *Fattibene v. Kealey*, 18 Conn. App. 344 (1989).

**Attorney's signature and representations before the Court**. "...equates an attorney's signature on a pleading, motion, or other document with an "affidavit of merit."" In essence, the signature represents a certification that to the best of the attorney's knowledge "formed after reasonable inquiry," the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.", Axelberg, Tracy, "Sanctions available for attorney's misconduct: a glimpse of the other remedies.", *Montana Law Review*, Vol. 47 (1986), page 96.

<u>**Court Order**</u>: *Illegal and Fraudulent Refusal to List the Joint-Owned Property of the Parties for Sale on or before 4/1/2021.*

"On or before April 1, 2021, the year in which the youngest child reaches 18, the parties shall list the property for sale with a real estate broker…", Provision 3a., *Memorandum of Decision* of 9/1/2010.

<u>**Court Orders**</u>: *Illegal and Fraudulent Change of Beneficiaries in each of the Parties' $1,000,000 Life Insurance Policies with Northwestern Mutual.*

"The Plaintiff is hereby obliged to pay for and maintain in effect the insurance policy on the life of the Defendant for the exclusive equal benefit of the party's three (3) children until the youngest child attains the age of twenty-three (23) years.", Provision 8, *Stipulation* of 6/10/2016.

"…. Northwestern Mutual Term Life insurance policy on the life of the husband in the face amount of $1,000,000 for the benefit of the three children of the marriage until the youngest child reaches the age of twenty- three." Provision 5.a., *Memorandum of Decision* of 9/1/2010.

" …. Northwestern Mutual term life insurance policy on her life in the face amount of $1,000,000 for the benefit of the minor children until the youngest child reaches age twenty-three.", Provision 5.b., *Memorandum of Decision* of 9/1/2010.

9

## III. <u>RELIEF</u>

**WHEREFORE**, the Defendant respectfully pleads the Court for the following:

**(i)** To order the Plaintiff to provide copies of the parties' $1,000,000 life insurance policies with Northwestern Mutual, including all documentation pertinent to their beneficiaries, prior to any mandated hearing in light of this motion for contempt.

**(ii)** To declare the Plaintiff in contempt to court for refusing to list for sale the property located at 10 Indian Pass, Greenwich, CT, on or before 4/1/2021, against Court orders.

**(iii)** To declare the Plaintiff in contempt to court for modifying the mandated beneficiaries in the parties' life insurance policies, against Court orders.

**(iv)** To order Northwestern Mutual to place the insurance policy over the life of the Defendant under his own ownership; to inscribe the three children of the parties as exclusive beneficiaries of both life insurance policies; to maintain the Plaintiff as their sole payor until 5/26/2026; and for the Plaintiff not to effect any changes on those insurance policies without prior Court authorization.

**(v)** To impose monetary sanctions on the Plaintiff for the misdeeds detailed herein, as well as any other equitable remedies the Court might deem proper and fair.

**(vi)** To grant legal fees and expenses to the Defendant-attorney at law.

DATED at Buenos Aires, on August 7, 2023.

10

By:_____
    Fernando IRAZU, *Pro Se*
    Defendant
    Attorney at Law

11

**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing has been delivered on August 7, 2023 to:

Margarita OLIVA SAINZ de AJA
m.olivasainz@gmail.com
+1 (203) 550-4162

LAW OFFICES OF KEVIN F. COLLINS
Kevin COLLINS
1177 Summer Street # 403
Stamford, CT 06905
+1 (203) 327-5400

kfc@collinspowers.com

DATED August 7, 2023, Buenos Aires, Argentina.

By: _____

Fernando G. IRAZU, *Pro-Se*
Defendant
Billinghurst 1656
Buenos Aires, 1425
Argentina
fgirazu@gmail.com
+54114824-1067

12